| | | |
|---|---|---|
| IN RE THE MATTER OF: | § | IN THE CIRCUIT COURT OF |
| | § | MONTGOMERY COUNTY, |
| THEODORE DAVIS, | § | ALABAMA |
| PLAINTIFF | § | |
| V. | § | |
| ARMSTRONG RELOCATION, LLN, | § | CASE NO.  CV 2004 - 370 |
| EDNA DUMAS | § | |

## AMENDED OBJECTION TO MOTION
## FOR
## PARTIAL SUMMARY JUDGEMENT

COMES NOW THE PLAINTIFF by and through his counsel of record and files this his Amended Objection to the Defendants Edna Dumas Motion for Partial Summary Judgement, and states the following to the Honorable Court:

1. The Motion filed by the Defendant is another attempt by the Defendant, Dumas, to commit fraud upon the legal system for her personal gain and/or an attempt to cause harm to the Plaintiff by her improper actions in this matter.

2. That the defendant is fully aware that the papers that she is claiming does not exist have been destroyed by her or her agents once she illegally and improperly gained the control of the home and the contents of said home, which is the subject of this dispute.

3. Petitioner claims the doctrine of unclean hands applies to the actions of the Defendant Armstrong and that the willful and wanton wrongful acts that she undertook against the Plaintiff and his property including improper eviction, having him improperly arrested, conversion, fraud, theft of property, slander, destruction of personal property, records, papers and files, and defamation of character to name a few, would bar her from any summary judgement.

4. That there are facts and issues to be decided in this matter currently before this court.
   A. That he was making payments to her for the purchase of the home.
   B. That the parties had entered into a written agreement for him to purchase the home from her for amount of money and that she kept in her control said document.
   C. That he was living in the home for nearly ten (10) years and that he had equity in the home in the form of payments made and repairs performed to the house.

   D. That her actions have caused him damages and that the house has been sold without giving him proper notice to vacate.

5. That the causes of action claimed by the Plaintiff against the Defendant are valid and actionable under the laws of the State of Alabama and this attempt to have the actions dismissed via a motion for partial summary judgement is unconscionable, against equity under the laws of the State of Alabama, and should be considered filing of frivolous motions.

6. That the claims made by the defendant in their prior motion to dismiss and now this motion for partial summary judgement is improper and premature and the Plaintiff is once again objecting to the claims in detail by referencing the prior objections filed by the Plaintiff. The Plaintiff is hereby adopting and incorporating the prior objections by reference and asking the Court to treat them as if they were pled in detail herein in this matter.

7. The Petitioner further states that this motion for partial summary judgement, is once again a willful and wanton attempt by the defendant via her counsel to abuse the system by making false and frivolous claims, motions and/or defenses to cover up her improper and illegal acts.

8. The Petitioner states that the Warranty Deed attached as Exhibit "A" of the Motion for partial summary judgement was a valid deed when recorded years ago, and it did reflect the status of the property prior to this dispute and the payments that the Plaintiff made to the Defendant, Armstrong, but that granting summary judgement without hearing evidence of the payments made, the wrongful eviction and/or the destruction of personal property, papers and receipts of the Plaintiff by the Defendant or her agents would be rewarding her for her improper and/or fraudulent acts which the Plaintiff alleges was grossly improper.

9. Plaintiff states that this house in question has been his home of record for almost ten (10) years and that he has made payments toward said home. (See attached Receipts and/or money orders) Plaintiff had more records but the Defendant got improper control of the house and had the records destroyed without his permission.

10. Without notice or due process, the Defendant tricked and/or misstated information to the Police and got an officer(s) of the Montgomery Police Department to improperly give her control of the Plaintiffs' home, his personal property, his furniture, food, drinks, clothing, medications, pictures, personal records, receipts, cash, and other valuables or property,

Defendant, Dumas

George L. Beck, Jr., Esquire
Post Office Box 2069
Montgomery, Al. 36102-2069

Defendant, Armstrong Relocation

Winston Sheehan, Jr., Esquire
Ball, Ball, Matthew & Novak, P.A.
P.O. Box 2148
Montgomery, Al. 36117

*/s/*
OF COUNSEL

| | |
|---|---|
| IN RE THE MATTER OF: § <br> § <br> THEODORE DAVIS, § <br>     PLAINTIFF, § <br> VS. § <br> § <br> ARMSTRONG RELOCATION, LLC, § <br> EDNA DUMAS, ET AL § <br>     DEFENDANTS. § | IN THE CIRCUIT COURT OF <br> MONTGOMERY COUNTY, ALABAMA <br><br> CASE NO.: <br><br> CV - 2004 -370 |



### AFFIDAVIT OF THEODORE DAVIS

Before me, the undersigned Notary Public in and for the State of Alabama at Large personally appeared **THEODORE DAVIS** who is known to me and who being first duly sworn, deposes and says as follows:

My name is **THEODORE DAVIS**. That I am a resident of the State of Alabama and have been for more than six months prior to the filing of this claim. I further state that I am over the age of nineteen now as well as when the events stated below occurred. The events stated below or made by me of my own freewill and or truthful and accurate to the best of my knowledge.

"On or about January 18, 2004, Ms. Dumas came to the home, which I was buying from her at 207 Rosedon Drive in Montgomery, Alabama, with three other males, and told me that she wanted me to vacate the property. I objected and she told me that it was her house and that I was going to get out. The male with her began to make menacing comments to me as well. She then told me that she could do what she wanted to because she had the papers and that I did not have anything, and that I could not sue her or do anything about it. I told her I was not leaving and that I was going to call the police. She told me I did not want to do that. I called the police and asked for an officer to come to the home. The rest of the nightmare is detailed below."

"The officer arrived and she told him that she owned the house and showed him the deed. I tried to tell him that I owned all the contents and had been living there since 1994 and was buying the house. She told him that I had never paid a penny to her. She also told him that she owned the contents of the home. I tried to tell him that the utilities were in my name not hers. He told me to be quite that the only thing he wanted to see was a deed to the home. I tried to tell him again that she had the contract and that I had been paying her. She yelled he hadn't paid me anything and I want him out, now! The officer then told me that I had to leave. She told me that she wanted me out, again. She then went into another room. The officer then asked me if I had any proof that I owned the home. I again, tried to tell him that she had the contract and that I was buying it from her. That the utilities where in my name, that the pictures and things in the house are all mine not hers, that she lives in New Jersey. The officer told me it did not matter that she had the deed and that if she wanted me out and that I had to leave or he would have to lock me

up. He then asked how long would it take for me to get my stuff out of the house. I told him two days, because I owned everything in the house not her. He went into the other room and talked to Ms. Dumas. When he came out he told me that I had to leave now that I had five minutes or he would have to lock me up. He then told me that Ms. Dumas had agreed to let me come back on Thursday to get my stuff. I told him that it would take longer than five (5) minutes to get clothes and stuff together. He told me to quit talking and start getting it together that I had until he was ready to leave to get my stuff together and get out or I was going to jail."

"I tried to object, but he told me he had heard enough. He stated Ms. Dumas has the deed and the law in Alabama says she has the right to do what she wants with this house. If you come back on this property you will be arrested and locked up. Do you understand?"

"I got a few clothes, some papers, and some other small items that I could but in a small bag and tote out the door. I then left and went to a friends house and called her and asked her if she would let me get my clothing and medications. She told me no that she was going out. I waited at my friends house until later that day. When she returned I called the Police and asked them if they would send someone over to help me get some clothing and medications. They told me to wait for them at the House. I explained that I did not want to be there until the officer was present because of the statements made by the police officer. I offered to wait until I saw the patrol car go by. They agreed and I waited for the Officer outside of my friends house. I talked to this officer, Officer Watts. He knocked on the door but Ms. Dumas and the male friends went to the back part of the house. I explained to the officer that the back door would most likely be unlocked and open because of a defect in the latch. We but went around back and I opened the door for the officer who then entered the house calling for Ms. Dumas. She appeared cussing and yelling. She wanted me out of the house. The officer asked me to step back out of the house. I did. He remained in the house and when he came out he had most my medications but nothing else. I tried to talk to him but he told me he had heard enough and that I needed to be quite and leave are he would lock me up. He again reminded me not to come back or that I would be locked up. He advised me that he had told Ms. Dumas that she could sign a warrant on me if she wanted. I left and went to Birmingham and stayed at my sisters house."

"I was forced to leave my home for the past ten (10) years that I had been paying on at the rate of $500.00 a month. I admit that I had not always paid each month but would hold the money and give it to her in larger amounts at one time. I had agreed to purchase the house for $65,000.00 plus I was to maintain the house. Ms. Dumas had me sign a hand written agreement to purchase the house which she kept. In fact, I routinely gave her records to keep and file for me. I have signed receipts from Ms. Dumas, for payments made to her, one dated November 4, 2002, for $ 3,000 for Jan. to June - Receipt number 064501 and Dec. 18, 2002 for $2,000.00 for payments from July to Oct.- Receipt Number 064502. I also have money order receipts from July 7, 2003 for $300.00 and $ 700.00 # 03212827323 & 03218287312 and another money order for $ 200.00 from Feb. 17, 1999 and another from May 28, 2000 for $200.00. (Copies have been attached)"

"I made payments to her and made improvements to this home. I paid for the roof being repaired on the house in the latter part of 2003, about $250.00 to $300.00. I also had a fence

installed around the house which I paid for. I had just purchased a storm door which I was going to have installed, it was on the patio when Ms. Dumas had me kicked out of my home. I had also paid for painting and other repairs from time to time. The bills would be placed in her name so she could claim the improvements on the house for tax purposes."

"Due to the improper actions of Ms. Dumas and the parties with her I was forced to leave my home, surrender my personal property to her and her friends who then proceeded to give away or destroy everything I owned. But they did not stop there, they also called friends and other people that I had numbers for and told them that I was dating men and that she had pictures of me with another man, that I was also with a young girl, a child, and that she had pictures of me with other women and that I most likely had diseases and that if they had slept with me they needed to go to the doctor and get checked out. She also called over two and half pages worth of people at my expense on my phone without my permission. The women she called were told that she had these pictures and that she would send them a copy if they wanted them. I later learned that she was sending copies of the pictures to everybody not just the ones with them in the picture. I also learned that she was calling people at 3:00 am in the morning or had other unusual times just to upset them. In fact she called some repeatedly calling them names like bitch and whore."

"Ms Dumas also called Greyhound and advised them that I had told her that I was not injured on the job and that I was trying to take them for $300,000.00 on a workers comp case."

"I also have learned that she has advised some people that she was my wife and that I was bringing them into her house and that I was sick and that she wanted to know if they knew anything about me and what I was doing. Others she would call and tell them that she was my girlfriend and that I was cheating on her and them to."

"I had one friend advise me that the nephew would call her and tell her that he was going to come to her house and do her as well. This friend stated that Ms. Dumas would call and cuss her, call her names and then hang up and then the nephew would call and be verbally abusive to her."

"Ms. Dumas took all my personal property and gave it away or had it thrown out in the dumpster. In fact, Ms. Dumas, or her nephew hired a moving service and had my property placed on the street where anybody and everybody was told they could have the property before I could get there to stop it from being done away with."

"When I went to the police station to report the theft of property I was arrested for trespass and locked up. I had to post bond, spend time in jail, 6 to 8 hours, pay $500.00 for bail, hire an attorney to defend me in this matter. And then I was served with papers stating that I had came onto her property in Montgomery, Alabama, where she lived and threatened her. She filed for a restraining order. I again had to hire and attorney and appear in Court. She did not even show up for the hearing but me and my attorney had to appear. But the most unfair thing is that the police would not let me sign any papers for the theft of property because it was a civil matter."

"Ms. Dumas has now sold the house I was paying for and is trying to get this case dismissed against her. I feel this is not fair because I have lost everything I own that was in the house. Some things cannot be replaced such as pictures of family, plus she also got, after breaking into my safe and removing the cash in the safe roughly $8,500.00 (which I was going to be paying her with), plus two uncashed checks, my jewelry, and some of the pictures that she has been copying and giving out, plus important papers."

*[signature]*
**THEODORE DAVIS**

SWORN TO AND SUBSCRIBED before me on this the _31st_ _ day of ___August__, 2004.

*[signature]*
NOTARY PUBLIC
My Commission expires /2-8-04 .



#8

## Receipt No. 064501

Date: November 1, 2002 / paid Nov-June  
$3000.00  
Received from: Theodore Davis  
Three Thousand  
For: @ 207 Roseden Drive / Montgomery AL.  
From: Theodore Davis to Edna Duncan  
Cash ☒  
By: Edna Duncan  
Bal. Due: 3,000.00

## Receipt No. 064502

Date: Dec. 28, 2002, / July – Oct.  
$2,000.00  
Received from: Theodore Davis  
Two Thousand  
For: @ 207 Roseden Drive / Montgomery AL.  
before pd 500, Dec–Jan  
From: Theodore Davis to Edna Duncan  
Cash ☒  
By: Edna Duncan  
Bal. Due: 1,500.00