IN RE THE MATTER OF: § IN THE CIRCUIT COURT OF
 § MONTGOMERY COUNTY,
THEODORE DAVIS, § ALABAMA
    PLAINTIFF §
V. §
ARMSTRONG RELOCATION, LLN, § CASE NO.   CV 2004 - 370
EDNA DUMAS §

BRIEF IN SUPPORT OF
RENEWED OBJECTION TO MOTION
FOR
PARTIAL SUMMARY JUDGEMENT
AND OBJECTION TO MOTION TO ENFORCE ORAL ORDER FOR
PARTIAL SUMMARY JUDGEMENT
AND MOTION TO ALTER VACATE AND AMEND
PRIOR RULING OF THE COURT

COMES NOW THE PLAINTIFF by and through his counsel of record and files this Brief in Support of the above and regarding the Motions filed by Defendants Edna Dumas Motion for Partial Summary Judgement and other issues, and states the following to the Honorable Court:

1. **Rule 60(b), Ala. R. Civ. P.**, states in pertinent part:
"**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.** On motion and *816 upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than four (4) months after the judgment, order, or proceeding was entered or taken."

2. The Counsel for th Plaintiff has already filed the Motion to Vacate, Alter or amend due to his missing a hearing on December 6, 2004 for which I did not have posted on my calender.

3. Attached to this brief is a copy of the affidavit of my Mother, Catherine Rountree whom I took to Birmingham for a CT scan, a meeting with Dr. Zeiger, and then for a Myelogram. All this was done on the 6th of December, 2004 due to her cancer treatment and test showing possible growths on her brain stem and bones in her neck. She was also suffering severe pain. My Mother was too sick to go back for the balance of the test on Tuesday the 7th. But due to the test result from Monday she had surgery to remove a disc from her neck on the 13th of December, 2004.

4. My Father is in a wheelchair, while he can still drive in an environment like Troy, Alabama, but he is unable to deal with the traffic pace in Birmingham, Al. In November he took my Mother to the hospital for follow up and was in a wreck which totaled the car they were driving.

5. My Mother was already upset worrying over the cancer issue and then having to worry about my Dad's driving abilities was causing extreme anxiety for her.

6. When she asked if I could take her on Thanksgiving day I told her I would check and see. I checked my calender at home, nothing was posted for either day the 6th or the 7th of December. Monday I checked the calenders at the office (all three) nothing was posted on them as well, so I called her and told her I could take her.

7. I did not learn that I had missed an hearing until the next day when I played my voice mail. I called the Court and talked to the Judges's Law clerk and advised what had happened.

8. The part-time receptionist stated that she had not picked up any document from the Court house with a hearing in this matter. She no longer works for me due to her health.

9. The Motion filed by the Defendant was and still is an another attempt to commit fraud upon the legal system for her personal gain and/or an attempt to cause further harm to the Plaintiff by her improper actions in this matter by not protecting the money that was gotten from the sale of the home without due process to the Plaintiff who was buying the home from her until she became angry with him because he was believed to be dating other women.

10. The Defendant claims that there are no papers that show him as purchasing the home or any agreement to purchase the home. I tis very easy for her to make this claim as she is fully aware that the papers that she is claiming does not exist have been destroyed by her on hands or by her agents once she illegally and improperly gained the control of the home, the contents of said home, the papers and records, and other items which belonged

to the Plaintiff Ted Davis.

11. This release of her from the case due to her claims of no issues regarding ownership is the subject of this dispute and that granting their Motion to dismiss due to counsel not being present for a motion hearing due to mistake in him not getting notice of the hearing would unjustly harm the Plaintiff.

12. But for the counsel for Plaintiff not being there to orally argue the issues regarding the alleged acts of the Defendant Dumas, and the copies of receipts already filed with the Court in the pleadings, and the fact that she lied or made false statements to the other defendants, remains issues for a jury to decide regarding the events that are claimed and denied by the parties.

13. The motion for summary judgement would have most likely been denied due to the unclean hands of Ms. Dumas and acts of her agents in this matter.

14. This motion for summary judgement is a veiled attempt to trick the Court into releasing money gotten from the sale of the home without the jury hearing the issues and evidence in this matter as she is a resident of another state and does not live in Alabama and would not even return to Court for the motion for protection that she filed with the Circuit Court.

15. A summary judgment is properly entered when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. **Rule 56(c), A.R.Civ.P.**; *Southern Guar. Ins. Co. v. First Alabama Bank*, **540 So.2d 732, 734 (Ala.1989)**.

16. Said release from this case would further damage the Plaintiff by denying him access to the Defendant Dumas as she would not return to the Court nor would she be willing to give testimony, she would not be required to pay any reimbursement for the personal property taken by her (Ms Dumas) and her agents some of whom have yet to be identified, and given away and/or destroyed by them.

17. Petitioner in his affidavit, attached hereto, claims that the Defendant tricked the police into giving her his property, that she then destroyed or gave away his property, that she destroyed his records of payment to her regarding the house, that she took money from his safe in the house (which she also took), that she has intentionally taken private documents and papers and published them to third parties, that she has slandered his name, and his reputation, and that all these acts from her unclean hands have unjust enriched her.

18. The actions taken by the Defendant Dumas was willful and wanton as well as wrongful and improper acts against the Plaintiff and his property. They included improper

eviction, having him improperly arrested (case was dismissed), conversion, fraud, theft of property, slander, destruction of personal property, breaking into his safe and taking of personal records, pictures, papers and files, and defamation of character to name a few, and would bar her from any summary judgement partial or otherwise.

19. That there has not been final order entered in this matter.

20. The City of Montgomery has been served and the officer Watts have been served by process server, David West.

21. The City of Montgomery has answered but the officer has failed to answer the complaint filed with the Court.

22. One Officer remains unknown at this time and said information is being sought from the Defendant, The City of Montgomery.

23. That the causes of action claimed by the Plaintiff against the Defendants are valid and actionable under the laws of the State of Alabama and this attempt to have the actions dismissed via a motion for partial summary judgement is unconscionable and should be considered filing of frivolous motions.

24. That the claims made by the defendant in their prior motion to dismiss and now this motion for partial summary judgement is improper and premature and the Plaintiff is once again objecting to the claims in detail by referencing the prior objections filed by the Plaintiff. The Plaintiff is hereby adopting and incorporating the prior objections by reference and asking the Court to treat them as if they were pled in detail herein in this matter.

25. The Petitioner states that the Warranty Deed attached as Exhibit "A" in this motion for partial summary judgement was a valid deed when recorded years ago, and it did reflect the status of the property prior to this dispute and the payments that the Plaintiff made to the Defendant, Armstrong, but that granting summary judgement without hearing evidence of the payments made, the wrongful eviction and/or the destruction of personal property, papers and receipts of the Plaintiff by the Defendant or her agents would be rewarding her for her acts which the Plaintiff alleges was grossly improper.

26. Plaintiff states that this house in question has been his home of record for the past nine to ten (9 - 10) years and that he has made payments toward said home. Without notice or due process, the Defendant tricked and/or got an officer of the Montgomery Police Department to improperly give her control of the Plaintiffs' home, his personal property, his furniture, food, drinks, clothing, medications, pictures, personal records, receipts,

cash, and other valuables or property, including a safe and cash, which the Defendant then disposed of, trashed, and/or gave away or converted to her own use.

27. After all of those acts mentioned above, the defendant has the nerve to state to this Honorable Court that she is entitled to a partial summary judgement because she has a warranty deed to the home and she is willing to make a statement that she never sold the home or transferred the home to the Plaintiff or that she never agreed to sell the home at 207 Rosedon Drive to the Plaintiff. The same woman that stated to the City Court, and police officer that she owned the property in the home, knowing it was a lie.

28. This Defendant also made false statements to the Circuit Court regarding the Plaintiff coming around her residence. When in fact she was stating that he was coming around the house he lived in. That case was also dismissed by the Court.

29. Said home that the Plaintiff was making payments on has been sold and the equity is now being sought by the Defendant with no concern about the destruction of the Plaintiff's personal property, papers, or other belongings, his being locked up due to her false charges, or legal expenses he has incurred in defending said claims.

Wherefore, based on the allegations and/or claims the Plaintiff ask that this Honorable Court deny the Motion for Partial Summary Judgement filed by the Defendant Dumas and grant the following:

1. Reinstate the Defendant Dumas into this matter, and
2. That the money gotten from the sale of the Home be turned over to the Court and held pending the outcome of this hearing, and
3. Grant any other remedies that the Court feels is proper and just in this matter at this time.

Michael Rountree, (ROU009)
Counsel for the Plaintiff

Of Counsel:

Rountree & Associates, LLC
448 Saint Lukes Drive
Montgomery, Alabama 36117
Phone:      (334) 270-8291
Fax:          (334) 270-8294

CERTIFICATE OF SERVICE

I hereby certify that I have this 15th day of January, 2005, served a copy of the foregoing to all known parties to this proceeding by placing the same in the United States mail, properly addressed and first-class postage prepaid to the following counsel of record for the defendant, Dumas and Armstrong. As well as mailing a copy to the Clerk of the Court.

**Counsel For the City of Montgomery**:

City of Montgomery Attorney's Office

Wallace D. Mills, Esquire

103 North Perry Street

Montgomery, Al. 36104

**Counsel for Dumas:**
Hon. George L. Beck, Jr.
Post Office Box 2069
Montgomery, Al. 36102-2069

Jeffery W. Smith, Esquire
P.O. Box 4486
Montgomery, Al. 36103-4486

**Defendant, Officer S. Watts**
Montgomery Police Department
For Officer S. J. Watts
320 North Ripley Street
Montgomery, Al. 36104

Melissa A. Rittennour,

Circuit Court Clerk

251 S. Lawrence Street

Montgomery, Al. 36104

_____
OF COUNSEL

| | |
|---|---|
| IN RE THE MATTER OF: | IN THE CIRCUIT COURT OF |
| THEODORE DAVIS, | MONTGOMERY COUNTY, ALABAMA |
| PLAINTIFF, | |
| VS. | CASE NO.: |
| | CV - 2004 -370 |
| ARMSTRONG RELOCATION, LLC, | |
| EDNA DUMAS, ET AL | |
| DEFENDANTS. | |

## AFFIDAVIT OF
## THEODORE DAVIS

Before me, the undersigned Notary Public in and for the State of Alabama at Large personally appeared **THEODORE DAVIS** who is known to me and who being first duly sworn, deposes and says as follows:

My name is **THEODORE DAVIS**. That I am a resident of the State of Alabama and have been for more than six months prior to the filing of this claim. I further state that I am over the age of nineteen now as well as when the events stated below occurred. The events stated below are made by me of my own freewill and or truthful and accurate to the best of my knowledge.

"On or about January 18, 2004, Ms. Dumas came to the home, which I was buying from her at 207 Rosedon Drive in Montgomery, Alabama, with three other males, and told me that she wanted me to vacate the property. I objected and she told me that it was her house and that I was going to get out. The male with her began to make menacing comments to me as well. She then told me that she could do what she wanted to because she had the papers and that I did not have anything, and that I could not sue her or do anything about it. I told her I was not leaving and that I was going to call the police. She told me I did not want to do that. I called the police and asked for an officer to come to the home. The rest of the nightmare is detailed below."

"The officer arrived and she told him that she owned the house and showed him the deed. I tried to tell him that I owned all the contents and had been living there since 1994 and was buying the house. She told him that I had never paid a penny to her. She also told him that she owned the contents of the home. I tried to tell him that the utilities were in my name not hers. He told me to be quite that the only thing he wanted to see was a deed to the home. I tried to tell him again that she had the contract and that I had been paying her. She yelled he hadn't paid me anything and I want him out, now! The officer then told me that I had to leave. She told me that she wanted me out, again. She then went into another room. The officer then asked me if I had any proof that I owned the home. I again, tried to tell him that she had the contract and that I was buying it from her. That the utilities where in my name, that the pictures and things in the house are all mine not hers, that she lives in New Jersey. The officer told me it did not matter that she had the deed and that if she wanted me out and that I had to leave or he would have to lock me up. He then asked how long would it take for me to get my stuff out of the house asMs. Dumas

had told him that she owned most if not all the belongings in the house. I told the officer that she was wrong that I owned the furniture and stuff in the house and that would take me two days, because I owned everything in the house not her. He went into the other room and talked to Ms. Dumas. When he came out he told me that I had to leave now that I had five minutes or he would have to lock me up. He then told me that Ms. Dumas had agreed to let me come back on Thursday to get my stuff. I told him that it would take longer than five (5) minutes to get clothes and stuff together. He told me to quit talking and start getting it together that I had until he was ready to leave to get my stuff together and get out or I was going to jail."

"I tried to object, but he told me he had heard enough. He stated Ms. Dumas has the deed and the law in Alabama says she has the right to do what she wants with this house. If you come back on this property you will be arrested and locked up. Do you understand?"

"I got a few clothes, some papers, and some other small items that I could but in a small bag and tote out the door. I then left and went to a friends house and called her and asked her if she would let me get my clothing and medications. She told me no that she was going out. I waited at my friends house until later that day. When she returned I called the Police and asked them if they would send someone over to help me get some clothing and medications. They told me to wait for them at the House. I explained that I did not want to be there until the officer was present because of the statements made by the police officer. I offered to wait until I saw the patrol car go by. They agreed and I waited for the Officer outside of my friends house. I talked to this officer, Officer Watts. He knocked on the door but Ms. Dumas and the male friends went to the back part of the house. I explained to the officer that the back door would most likely be unlocked and open because of a defect in the latch. We but went around back and I opened the door for the officer who then entered the house calling for Ms. Dumas. She appeared cussing and yelling. She wanted me out of the house. The officer asked me to step back out of the house. I did. He remained in the house and when he came out he had most my medications but nothing else. I tried to talk to him but he told me he had heard enough and that I needed to be quite and leave are he would lock me up. He again reminded me not to come back or that I would be locked up. He advised me that he had told Ms. Dumas that she could sign a warrant on me if she wanted. I left and went to Birmingham and stayed at my sisters house."

"I was forced to leave my home for the past ten (10) years that I had been paying on at the rate of $500.00 a month. I admit that I had not always paid each month but would hold the money and give it to her in larger amounts at one time. I had agreed to purchase the house for $65,000.00 plus I was to maintain the house. Ms. Dumas had me sign a hand written agreement to purchase the house which she kept. In fact, I routinely gave her records to keep and file for me. I have signed receipts from Ms. Dumas, for payments made to her, one dated November 4, 2002, for $ 3,000 for Jan. to June - Receipt number 064501 and Dec. 18, 2002 for $2,000.00 for payments from July to Oct.- Receipt Number 064502. I also have money order receipts from July 7, 2003 for $300.00 and $ 700.00 # 03212827323 & 03218287312 and another money order for $ 200.00 from Feb. 17, 1999 and another from May 28, 2000 for $200.00. (Copies have been attached)"

"I made payments to her and made improvements to this home. I paid for the roof being

repaired on the house in the latter part of 2003, about $250.00 to $300.00. I also had a fence installed around the house which I paid for. I had just purchased a storm door which I was going to have installed, it was on the patio when Ms. Dumas had me kicked out of my home. I had also paid for painting and other repairs from time to time. The bills would be placed in her name so she could claim the improvements on the house for tax purposes."

"Due to the improper actions of Ms. Dumas and the parties with her I was forced to leave my home, surrender my personal property to her and her friends who then proceeded to give away or destroy everything I owned. But they did not stop there, they also called friends and other people that I had numbers for and told them that I was dating men and that she had pictures of me with another man, that I was also with a young girl, a child, and that she had pictures of me with other women and that I most likely had diseases and that if they had slept with me they needed to go to the doctor and get checked out. She also called over two and half pages worth of people at my expense on my phone without my permission. The women she called were told that she had these pictures and that she would send them a copy if they wanted them. I later learned that she was sending copies of the pictures to everybody not just the ones with them in the picture. I also learned that she was calling people at 3:00 am in the morning or had other unusual times just to upset them. In fact she called some repeatedly calling them names like bitch and whore."

"Ms Dumas also called Greyhound and advised them that I had told her that I was not injured on the job and that I was trying to take them for $300,000.00 on a workers comp case."

"I also have learned that she has advised some people that she was my wife and that I was bringing them into her house and that I was sick and that she wanted to know if they knew anything about me and what I was doing. Others she would call and tell them that she was my girlfriend and that I was cheating on her and them to."

"I had one friend advise me that the nephew would call her and tell her that he was going to come to her house and do her as well. This friend stated that Ms. Dumas would call and cuss her, call her names and then hang up and then the nephew would call and be verbally abusive to her."

"Ms. Dumas took all my personal property, over $20,000, set it on the street and gave it away or had it thrown out in the dumpster. In fact, Ms. Dumas, or her nephew hired a moving service and had my property placed on the street where anybody and everybody was told they could have the property. Before I could get there to stop it, my property was done away with."

"When I went to the police station to report the theft of property I was arrested for trespass and locked up. I had to post bond, spend time in jail, 6 to 8 hours, pay $500.00 for bail, hire an attorney to defend me in this matter. And then I was served with papers stating that I had came onto her property in Montgomery, Alabama, where she lived and threatened her. She filed for a restraining order. I again had to hire and attorney and appear in Court. She did not even show up for the hearing but me and my attorney had to appear. But the most unfair thing is that the police would not let me sign any papers for the theft of property because it was a civil

matter."

"Ms. Dumas has now sold the house I was paying for and is trying to get this case dismissed against her. I feel this is not fair because I have lost everything I own that was in the house. Some things cannot be replaced such as pictures of family, plus she also got, after breaking into my safe and removing the cash in the safe roughly $8,500.00 (which I was going to be paying her with), plus two uncashed checks, my jewelry, and some of the pictures that she has been copying and giving out, plus important papers."

"I further state that I received no notice of a hearing date regarding the claims against Ms Dumas nor did my attorney receive any notice because we talked on the 2nd of December about the status of the case. He told me then that there would be a hearing in the future but that nothing had been set yet. I got upset then because I could not understand why the Court was wanting to let her out of this case when she is the one that caused me the problems. She is the one that told the officer incorrect information and then tried to lie to the Judge in City Court. Her falsehoods and lies about me have caused all sorts of problems. Mr Rountree told me he would let me know when he got notice of the hearing date."

"Then Mr. Rountree called me and advised that she had been dismissed in this matter due to him not being there for a hearing. I really got upset. He reminded me that he did not know about the hearing on the 6th of December, 2004, that we talked about the filings in this case that day, Thursday the week prior. He also advised me that he was filing a motion to vacate alter or amend the prior order of the court."

"I am asking the Court to please reconsider their dismissal in the interest of justice in this matter. If it was not for the actions of Ms. Dumas and her falsehoods about the property in the home I would not be as I am. I have loss everything I owned except what I could tote out with we that night that Ms Dumas tricked the police into giving her the contents of the house. They should have known better, but Ms. Dumas is the one who repeatedly lied to the police and the Courts and know is getting away with it."

_____
**THEODORE DAVIS**

SWORN TO AND SUBSCRIBED before me on this the _10th_ day of ___January__, 2005.

_____
NOTARY PUBLIC
My Commission expires _12/29/08_.

| | |
|---|---|
| IN RE THE MATTER OF: § | IN THE CIRCUIT COURT OF |
| § | MONTGOMERY COUNTY, ALABAMA |
| THEODORE DAVIS, § | |
|     PLAINTIFF, § | CASE NO.: |
| VS. § | |
| § | CV - 2004 -370 |
| ARMSTRONG RELOCATION, LLC, § | |
| EDNA DUMAS, ET AL § | |
|     DEFENDANTS. § | |

## AFFIDAVIT OF
## CATHERINE ROUNTREE

Before me, the undersigned Notary Public in and for the State of Alabama at Large personally appeared **CATHERINE ROUNTREE** who is known to me and who being first duly sworn, deposes and says as follows:

My name is **CATHERINE ROUNTREE**. That I am a resident of the State of Alabama. I further state that I am over the age of nineteen now as well as when the events stated below occurred. The events stated below are made by me of my own freewill and or truthful and accurate to the best of my knowledge.

"On December 6, 2004, Michael Rountree, my son took me to Birmingham, Alabama for testing. I had to go to the hospital on the North side of Birmingham, Al. (Caraway medical center for x-rays and a meeting with a neurosurgeon. The reason for the test is that I have breast cancer and have been treated with chemotherapy and radiation. I had began to have severe headaches, blurred vision, and other symptoms that concerned my doctors that my cancer may have spread. I had been having tests performed in Dothan and Birmingham and my husband who has to use a wheelchair to get around had been taking me. However, on the last trip to Birmingham he was in a car wreck and totaled out our car."

"I asked my son, Michael if he could take me during Thanksgiving. He told me he would check his calender and if he could he would take me. He called me back on Monday and told me that he nothing on his calender and that he would take me to the doctor on both the 6 and 7th for the tests. This was a relief to me and my husband because we where not looking forward to him having to drive in the downtown traffic again."

"On the morning of the 6th he picked me up at 3:00 a.m. and we left Troy so we could be in Birmingham by 6:30 to 7:00 a.m. We went to UAB and picked up my x-rays and then went to Caraway. I had more x-rays taken and then saw my doctor. He then sent me to Graystone Imaging in Hoover for additional test. A mylogram was performed and we left Birmingham late that afternoon about 5:00 p.m. I was supposed to return to Birmingham the following day but I was too sick to travel."

"Due to the results of the test I had to have the seventh disc in my neck removed due to the damage the radiation had caused to the disc and the damage it was causing to my spinal cord I had to have surgery on the 20th 13th of December."

*Catherine Rountree*
**CATHERINE ROUNTREE**

SWORN TO AND SUBSCRIBED before me on this the __15th__ day of __January__, 2005.

*[signature]*
NOTARY PUBLIC
My Commission expires 12/29/08.

# CARRAWAY
## METHODIST MEDICAL CENTER
1600 Carraway Boulevard
Birmingham, AL 35234

Telephone (205) 502-6897 or Toll Free 1-877-501-7846

|  | MASTERCARD |  | DISCOVER |  | VISA |
|---|---|---|---|---|---|
| CARD NUMBER | | | | AMOUNT | |
| SIGNATURE | | | | EXP. DATE | |

| ACCOUNT NO. | STATEMENT DATE | PAY THIS AMOUNT | SHOW AMOUNT PAID |
|---|---|---|---|
| 32421273 | 12/24/04 | .00 | |

**ADDRESSEE:**

P1P   00   2,745   2,745
CATHERINE S ROUNTREE
2305 PIKE CO LAKE RD
TROY AL   36079-5110

**MAKE CHECKS PAYABLE TO:**

CARRAWAY METHODIST MEDICAL CENTER
DEPT 5100
P.O. BOX 2153
BIRMINGHAM AL   35287-5100

Please check if above address is incorrect and indicate change on reverse side.   TO INSURE PROPER CREDIT, DETACH AND RETURN THIS PORTION IN THE ENCLOSED ENVELOPE.

| PATIENT NAME | PATIENT ACCOUNT NO. | SERVICE START | SERVICE END | STATEMENT DATE |
|---|---|---|---|---|
| ROUNTREE, CATHERINE S | 32421273 | 12/13/04 | 12/14/04 | 12/24/04 |

| DATE | DESCRIPTION | | TOTAL |
|---|---|---|---|
| | ROOM-BOARD/SEMI | 737.00 | |
| | PHARMACY | 479.00 | |
| | IV SOLUTIONS | 207.00 | |
| | DRUGS/OTHER | 1,158.00 | |
| | MED-SUR SUPPLIES | 371.00 | |
| | MED/SUR STERILE SUPPLIES | 2,220.50 | |
| | MED/SUR SUPPLIES OTHER IMPLANTS | 5,480.00 | |
| | LABORATORY | 153.00 | |
| | LABORATORY-CHEMISTRY | 81.00 | |
| | LABORATORY-IMMUNOLOGY | 65.00 | |
| | LABORATORY-HEMATOLOGY | 43.00 | |
| | DX X-RAY | 410.00 | |
| | O/R SERVICES | 4,299.00 | |
| | BLOOD/STOR-PROC | 56.00 | |
| | RECOVERY ROOM | 865.00 | |
| | EKG/ECG | 54.00 | |
| | ANESTHESIA/NURSE ANESTHETIST | 2,848.00 | |

Payment and charges received after the statement date will be reflected on the next statement.
Payment due upon receipt of statement.

**MESSAGES**

| | |
|---|---|
| CURRENT ACCOUNT BALANCE | 19,526.50 |
| TOTAL AMOUNT EXPECTED FROM INSURANCE | 19,526.50 |
| BALANCE NOW DUE FROM PATIENT/GUARANTOR | .00 |

FOR INQUIRIES OR PAYMENT ARRANGEMENTS CALL 502-6897 OR TOLL FREE AT 877-501-7846. IF THERE IS A PATIENT BALANCE AMOUNT DUE, IT IS THE RESPONSIBILITY OF THE PATIENT TO PAY THIS AMOUNT IN FULL OR MAKE FINANCIAL ARRANGEMENTS. IF AMOUNT ABOVE SHOWS AN INSURANCE BALANCE, WE HAVE OR WILL FILE YOUR INSURANCE. IF THE INSURANCE FAILS TO PAY PART OR ALL OF THE EXPECTED BALANCE, THE PATIENT IS RESPONSIBLE FOR THAT AMOUNT.
BENEFITS ASSIGNED TO: CARRAWAY METHODIST MEDICAL CENTER
ALABAMA CODE 1975        22-21-7-(G)

| INSURANCE | POLICY # |
|---|---|
| 2/17/2004 MEDICARE | 420326322B |
| 2/17/2004 BLUE CROSS | PPA420326322 |
| MCARE-RN-ANESTHESIA | 420326322A |



## POST MYELOGRAM INSTRUCTIONS

DATE: 12/6/04

PATIENT NAME: Catherine Rountree

PATIENT ACCT#: 138

- Do not drive for at least 12 hours.
- Avoid lifting or any strenuous activities for at least 12 hours.
- Rest for the remainder of the day
- Keep head elevated at approximately 30 degrees for the rest of the day.
- Drink plenty of fluids.
- For mild to moderate headache you may use Tylenol. *(Use according to the label)*
- For worsening headache or any other problems call Dr. Fliger at 250-6805.

I have received and reviewed these instructions:

Catherine S. Rountree
Patient Signature

Witness

(205) 995-4900 • FAX (205) 995-0203
7500 HUGH DANIEL DRIVE
SUITE 150
HOOVER, ALABAMA 35242

**GREYSTONE IMAGING CENTER**
7500 HUGH DANIEL DRIVE, SUITE 150
BIRMINGHAM, AL 35242

16466-VX04

RETURN SERVICE REQUESTED
LAST PMT:   12/28/2004
AMOUNT:         582.36

☐ Please check box if address is incorrect or insurance information has changed, and indicate change(s) on reverse side.

ADDRESSEE:

CATHERINE ROUNTREE
2305 PIKE COUNTY LAKE RD
TROY, AL 36079-5110

| CARD NUMBER | | SIGNATURE CODE |
|---|---|---|
| SIGNATURE | | EXP. DATE |

| STATEMENT DATE | PAY THIS AMOUNT | ACCT. # |
|---|---|---|
| 12/31/2004 | $60.27 | 3935 |

PAGE: 1 of 1

SHOW AMOUNT PAID HERE  $

REMIT TO:

GREYSTONE IMAGING CENTER
PO BOX 931080
ATLANTA, GA 31193-1080

16466 VX04 1F213ENDF000049

PLEASE DETACH AND RETURN TOP PORTION WITH YOUR PAYMENT

## STATEMENT

| Date of Service | Patient | Date Ins Billed | Code | Dr # | Description | Diag. | Charge | Insurance Receipts | Patient Receipts | Adjust. | Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/06/04 | Catherine | 12/08/04 | 72126 | TGH | CT - Cervical with | 722.0 | 860.00 | 241.09 | | 558.64 | 60.27 |

\*\* Payment is due upon receipt. Thank you. \*\*

| Current | 30-60 Days | 60-90 Days | 90-120 Days | 120 Days + | Total Balance | Ins. Pending | PATIENT DUE |
|---|---|---|---|---|---|---|---|
| 60.27 | 0.00 | 0.00 | 0.00 | 0.00 | 60.27 | 0.00 | $60.27 |

**Doctor Codes:**

**Message**

**Make Checks Payable To:**
GREYSTONE IMAGING CENTER
P.O. BOX 931080
ATLANTA, GA 31193-1080

**Billing Questions**
(205) 995-9899

# STATEMENT

| | | BILLING DATE |
|---|---|---|
| CURRENT | .00 | 03-06 |
| OVER 30 DAYS | | ACCOUNT NUMBER 20317362 |
| OVER 60 DAYS | | TOLL FREE PHONE NUMBER 800-272-6481 |
| OVER 90 DAYS | | CODES 00-00-001 |
| BALANCE DUE 25.00 | AMOUNT PAID | |

600
1677

NORWOOD CLINIC INC.
PO BOX 830230
BIRMINGHAM AL 35283

SEE REVERSE TO MAKE CREDIT CARD PAYMENTS

20317362/1677/M/11

CATHERINE SIMPSO ROUNTREE
2305 PIKE COUNTY LAKE ROAD
TROY AL 36079-5110

NORWOOD CLINIC INC.
PO BOX 830230
BIRMINGHAM AL 35283

334-566-0137

CATHERINE SIMPSO ROUNTREE

| Date | Patient Name | Attending Physician | Medical Service Rendered | Charge | Credit |
|---|---|---|---|---|---|
| 122304 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | BLUE CROSS PAYMENT $25 COPAY/DEDUCTIBLE FOR 12-06-04 SERVICES | | 16.52- |
| 122304 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | BLUE CROSS PAYMENT FOR 12-06-04 SERVICES | | 11.27- |
| 122304 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | BLUE CROSS PAYMENT FOR 12-06-04 SERVICES | | 9.44- |
| 120604 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | OUTPATIENT CONSULTATIO | 281.00 | |
| 122004 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | MEDICARE NONALLOWED | | 73.39- |
| 122004 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | MEDICARE PAYMENT | | 166.09- |
| 120604 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | XRAY SPINE COMPLETE | 129.00 | |
| 122704 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | MEDICARE NONALLOWED | | 72.63- |
| 122704 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | MEDICARE PAYMENT | | 45.10- |
| 120604 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | SKULL 4VIEWS COMPLETE | 116.00 | |
| 122704 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | MEDICARE NONALLOWED | | 68.79- |
| 122704 | CATHERINE SIMPSO | RH EVAN ZEIGER MD | MEDICARE PAYMENT | | 37.77- |

THIS STATEMENT REFLECTS YOUR CURRENT BALANCE. PROMPT PAYMENT IS APPRECIATED.

| Name | Paid Year to Date | | Account | Balance |
|---|---|---|---|---|
| | Insurance | Patient | | |
| NORWOOD CLINIC INC. | .00 | .00 | 20317362 | 25.00 |

All charges and credits made after the billing date will appear on next month's statement

*Keep for your records*