**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **THEODORE DAVIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 2:05-cv-632-WKW** |
| **vs.** | ) | |
| | ) | |
| **ARMSTRONG RELOCATION, LLC,** | ) | |
| **Edna Dumas, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT ARMSTRONG RELOCATION'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**COMES NOW**, the defendant, Armstrong Relocation, LLC[1] (hereinafter "Armstrong"), and submits the following Brief in support of its Motion for Summary Judgment filed contemporaneously herewith.

## I. Introduction

This case arises out of a domestic dispute between the plaintiff Theodore Davis (hereinafter "Mr. Davis") and Edna Dumas (hereinafter "Ms. Dumas"). Mr. Davis and Ms. Dumas had a romantic, long-distance relationship for many years. Ms. Dumas lived in New Jersey but owned a house in Montgomery, Alabama. Mr. Davis lived in Ms. Dumas' house in Montgomery. They visited each other on occasion.

Ms. Dumas, on a trip to Montgomery, found some photographs in her house of scantily clad women and a pornographic video of Mr. Davis with another woman. Ms. Dumas became angered by this discovery and on January 18, 2004, with the help of some family members,

[1] The plaintiff brings state and/or federal claims against several other defendants. This brief only addressed the claims brought against Armstrong Relocation.

instructed Mr. Davis to leave her house. Mr. Davis did not want to leave and called the police. The police arrived at Ms. Dumas' house and instructed Mr. Davis to leave the house and to not return because Ms. Dumas was the homeowner and wanted him to leave. Mr. Davis left but later returned to the house to retrieve some of his belongings. Since he had been instructed earlier by the police officer to not return to the house, Mr. Davis called the police to meet him at Ms. Dumas' house. The police officer and Mr. Davis were met at the house by Ms. Dumas and her nephew, Eddie Wood, who told them to leave. The police officer entered the house without Mr. Davis to sort things out. The police officer came out of the house after a few minutes and told Mr. Davis to leave the premises. Mr. Davis left and went to his sister's house in Birmingham, Alabama.

Eddie Woods subsequently called Armstrong Relocation and set up a minimum three hour move. On January 19, 2004, Armstrong movers Lee Green and Edwin Lollar arrived at Ms. Dumas' house on Rosedon Drive where they were instructed by Ms. Dumas to remove all of the items from the house and place them on the curb. Mr. Davis' daughter arrived on the scene with two companions, a pickup truck and two vans. Ms. Dumas would not allow Mr. Davis' daughter to enter the house but told her that she could take any of the property placed out on the curb. Mr. Davis' daughter began putting items in their vehicles. Armstrong completed the job, Ms. Dumas paid for the four hour move in cash, and the business transaction was complete.

## <u>II. Narrative Summary of Undisputed Facts</u>

In 1994, the plaintiff, Theodore "Ted" Davis and defendant Edna Dumas rekindled a 20 year friendship. (Davis depo. p.30, l.23-p.31, l.8). Ms. Dumas was living in New Jersey and Mr. Davis lived in Montgomery, Alabama. (Davis depo. p.31, l.9-12). Ms. Dumas suggested to Mr. Davis that he could live in her house on Rosedon Drive in Montgomery, Alabama because he

had just come off of the Greyhound Bus strike and needed some place to live. (Davis depo. p.31, l.16-p.32, l.12). During a 10 year period, they would see each other on occasion when one would visit the other. (Davis depo. p.57, l.23-p.58, l.8).

Ms. Dumas found out about some photographs Mr. Davis had in her home of other women scantily clothed. (Davis depo. p. 113, l. 4-p. 127, l.10). She also learned about a pornographic video of Mr. Davis with another woman at the house on Rosedon Drive. (Davis depo. p. 128, l. 10-p. 129, l.13). Ms. Dumas got angry with Mr. Davis about what he was doing with these other women. (Davis depo. p. 129, l. 14-18).

At approximately 8:30 a.m. on Sunday, January 18, 2004, Ms. Dumas, her nephew Eddie Woods, and two other men arrived at the Rosedon Drive address and instructed Mr. Davis to leave. (Davis depo. p.58, l.18-p.60, l.15). Mr. Davis called the police. (Davis depo. p.60, l.16-17). A police officer later arrived and after about 20 to 40 minutes, Mr. Davis left the house. (Davis depo. p.61, l.1-2; p.72, l.14-p.73, l.10).

After leaving Rosedon Drive, Davis went to his friend Thomas Hardy's house for a couple of hours. (Davis depo. p.73, l.8-10). He remembered that he had a safe with about $8,000 cash in the house on Rosedon Drive and he needed to get medication from the house. (Davis depo. p.73, l.11-p.74, l.2). Mr. Davis called the Montgomery Police Department and they sent Officer S.J. Watts to the Rosedon Drive address. (Davis depo. p.74, l.12-13; p.168, l.13-22; p.186, l.12-13).

Since the first police officer had instructed Mr. Davis not to return to the address, Mr. Davis followed the second police officer from a neighbor's house and they went around to the back of Ms. Dumas' house and were able to gain entry through a back door. (Davis depo. p.74, l.12-p.76, l.10). Officer Watts and Mr. Davis were confronted by Ms. Dumas and her nephew

Eddie Wood who told them to leave. (Davis depo. p.76, l.10-17). Davis did not get any further than the kitchen and was asked by Officer Watts to leave until he could sort things out. (Davis depo. p.181, l.7-12). About five minutes later, Officer Watts came out and told Davis to leave the premises. (Davis depo. p. 77, l. 17-p.78, l.11). Davis then drove to his sister's house in Birmingham, Alabama. (Davis depo. p. 79, l. 22-23).

On January 19, 2004, Armstrong Relocation sent two movers, Lee Green and Edwin Lollar, to the Rosedon Drive location to do a four hour move. (Affidavits of Lee Green and Edwin Lollar). This move had been set up by Ms. Dumas' nephew, Eddie Woods on her behalf. (See Dumas' Responses to Plaintiff's Request for Admissions; Affidavits of Lee Green and Edwin Lollar). Lee Green has been employed by Armstrong Relocation for three years. (Affidavit of Lee Green). Edwin Lollar has been employed by Armstrong Relocation for twenty-five years. (Affidavit of Edwin Lollar). During the move, Edna Dumas, was at the house on Rosedon Drive directing the move. (Affidavits of Lee Green and Edwin Lollar). Lee Green and Edwin Lollar understood Ms. Dumas to be the owner of the house. (Affidavits of Lee Green and Edwin Lollar).

Lee Green and Edwin Lollar understood that the items were being removed from the house because of an eviction. (Affidavits of Lee Green and Edwin Lollar). Ms. Dumas told them that the day before, the police had been at the house because of the eviction, and Mr. Davis was barred from the property. (Affidavits of Lee Green and Edwin Lollar). Ms. Dumas instructed Lee Green and Edwin Lollar to set all of the items from the house on the curb. (Affidavits of Lee Green and Edwin Lollar).

Lee Green and Edwin Lollar were at the house from about 10:00 a.m. to 2:00 p.m. (Affidavits of Lee Green and Edwin Lollar). Mr. Davis' daughter arrived at the house early that

afternoon with a female and male companions and a pickup truck and two vans. (Affidavits of Lee Green and Edwin Lollar). Ms. Dumas told Mr. Davis' daughter that she could not enter the house but could take the items once they were out on the curb. (Affidavits of Lee Green and Edwin Lollar). Mr. Davis' daughter started to put the items in their vehicles. (See Dumas' Responses to Plaintiff's Request for Admissions; Affidavits of Lee Green and Edwin Lollar).

At approximately 2:00 p.m., Ms. Dumas paid for the four hour move in cash, completing the business transaction with Armstrong Relocation. (See Bill of Lading attached to Affidavits of Lee Green and Edwin Lollar).

Mr. Davis learned about the move from some family and friends and on January 20, 2004, Mr. Davis traveled from Birmingham to Montgomery and went to the Montgomery County Sheriff's office about the matter where they suggested that he go to the Montgomery Police Station. (Davis depo. p. 178, l. 12-21). When Mr. Davis arrived at the police station, they told him he was under arrest for trespass due to a warrant that had been sworn out by Ms. Dumas. (Davis depo. p. 179, l. 3-9). Mr. Davis was arrested about 12:30 p.m. on January 20, 2004, finger printed, booked, and placed in a holding cell for five or six hours. (Davis depo. p. 209, l. 11-23; p. 210, l.18-23). His friend, Thomas Hardy, posted his bail of $500 and he was released late that afternoon. (Davis depo. p. 211, l. 8-20).

This case was originally filed in the Circuit Court of Montgomery County, Alabama on February 10, 2004. This case was removed to Federal Court on July 6, 2005 within 30 days of the action becoming removable.

**III. Argument**

The plaintiff brings the following state law claims against Armstrong Relocation: (1) conversion; and (2) negligence[2]. Specifically, the plaintiff bases his allegations against Armstrong Relocation on his claims that Armstrong Relocation

> removed the belongings of the plaintiff from the home in Montgomery, Alabama against his will and without proper authority or authorization of the plaintiff. Armstrong Relocation set the personal property, clothing, papers, furniture and appliances of the plaintiff in the yard in front of the house where the property was then taken by unknown persons…. Witnesses have advised the plaintiff that they saw the large screen television and some other components of the entertainment center, as well as the entertainment center loaded onto the moving truck. When the Agents, employees or representatives of the defendant, Armstrong Relocation left, said items also left with them. Requests have been made for the return of the items but that has been refused by denial of any knowledge of the items being loaded on the truck.

(Doc.24, p.3, 4-plaintiff's Brief in Support of Complaint). Defendant's Motion for Summary Judgment is due to be granted for two reasons: (1) under Alabama law, a bailee is not liable for receiving and delivering goods even when the goods are received from a person with no authority to dispose of them and the person receiving them had no right to receive them; and (2) the defendant had no duty to the plaintiff such that any cause of action for negligence can lie.

A. Conversion

In order to "sustain a claim of conversion, there must be (1) a wrongful taking; (2) an illegal assertion of ownership; (3) an illegal use or misuse of another's property; or (4) a wrongful detention or interference with another's property." Penttala v. David Hobbs BMW, 698 So.2d 137, 139 (Ala.Civ.App.1997)(citing Grey v. Liberty National Life Insurance

[2] Although the plaintiff asserts federal claims against several co-defendants, no federal claims have been asserted against Armstrong Relocation.

Company, 623 So.2d 1156 (Ala.1993)). In the case at bar, Armstrong Relocation was hired by Edna Dumas to move property out of her home. Under Ms. Dumas' direction, Armstrong Relocation moved items out of her home and placed them on the curb. The Armstrong Relocation movers understood that the items were being removed from the home pursuant to an eviction and that Mr. Davis was legally barred from the property. The acts of moving the items from the house and placing them on the curb cannot serve as a basis, under Alabama law, for a claim of conversion.

Pursuant to Alabama Code §7-7-404:

> A bailee who in good faith including observance of reasonable commercial standards has received goods and delivered or otherwise disposed of them according to the terms of document of title or pursuant to this article is not liable therefor. This rule applies even though the person from whom he received the goods had no authority to procure the document or to dispose of the goods and even though the person to whom he delivered the goods had no authority to receive them.

§7-7-404 Code of Alabama (1975).

In other words,

> [t]he section states explicitly what is perhaps an implication from the old acts that the common law rule of innocent conversion by unauthorized intermeddling with another's property is inapplicable to the operations of commercial carriers and warehousemen, who in good faith and with reasonable observance of commercial standards perform obligations which they have assumed and which generally they are under a legal compulsion to assume.

§7-7-404 Code of Alabama (1975) official comment.

In the case at bar, Armstrong Relocation was hired by Ms. Dumas to move Mr. Davis' belongings out of her house. The movers from Armstrong Relocation understood that the house was being cleared out because Mr. Davis had been evicted. They further understood that the police had been out to the house on the previous day and that Mr. Davis was legally barred from

the property. Ms. Dumas directed Armstrong Relocation movers to move the personal property to the curb, which they did. Such action, pursuant to Alabama law, does not constitute conversion.

The plaintiff can produce no evidence that Armstrong Relocation did not act in good faith in moving the property from Ms. Dumas' house. The plaintiff, in reference to his conversion claim, relies on what witnesses advised him that they saw. (Doc. 24, pg. 4). This inadmissible hearsay is insufficient to overcome a properly supported motion for summary judgment. See Aldridge v. DaimlerChrysler Corp., 809 So.2d 785, 797 (Ala. 2001)(holding that "[h]earsay statements that do not fall within an exception are inadmissible and cannot be used as evidence to defeat a properly supported summary-judgment motion."). Further, even if the purported hearsay was admissible, the statement that items were loaded onto a moving van is insufficient to establish a cause of action for conversion under Alabama law. The evidence establishes that Armstrong Relocation was hired to move items out of Ms. Dumas' house, and that the movers moved items out of the home as directed by Ms. Dumas. Armstrong Relocation is shielded from liability for such action by Alabama statutory law. Accordingly, summary judgment is due to be granted.

B. Negligence

In order to maintain a cause of action for negligence, the plaintiff must establish 1) duty; 2) breach of duty; 3) causation; and 4) damages. See Zanaty Realty, Inc. v. Williams, 2005 WL 3082791 (Ala. 2005). Indeed, "[i]t is axiomatic that to maintain a negligence claim, one must point to the existence of a duty on the part of the defendant." Id. at *3. The plaintiff cannot establish that Armstrong had any duty to him. The plaintiff complains that Armstrong moved his belongings from Ms. Dumas' house. However, as § 7-7-404 of the Alabama Code makes clear,

Armstrong is not liable for the delivery of property, even if the person from whom the property was received had no right to the property and the person receiving the property had no right to it. The Armstrong Relocation movers understood that Ms. Dumas owned the house and had evicted the tenant. They further understood that the tenant, Mr. Davis, was legally barred from the property. They knew that Mr. Davis' daughter was on the scene with companions and loaded items into their vehicles. These circumstances did not create any duty flowing from Armstrong Relocation to Mr. Davis.

It is unclear whether the plaintiff is asserting a claim against Armstrong Relocation for negligent hiring and supervision. Even is such a claim is asserted, it too must fail. Alabama law is clear that "[a]n employer may be held responsible for its employee's incompetence when that employer has notice or knowledge, whether presumed or actual, of such incompetence." Zielke v. AmSouth Bank, 703 So.2d 354, 358-59 (Ala. Civ. App. 1996). First, there is no evidence that the Armstrong Relocation employees were negligent in the exercise of their employment responsibilities. Second, even if a question of fact as to whether the employees were negligent existed, there is no evidence that Armstrong Relocation had any notice or knowledge that it was likely its employees would engage in negligent behavior. See Sanders v. Shoe Show, Inc., 778 So.2d 820, 824 (Ala. Civ. App. 2000)(holding that liability for negligent supervision "depends upon its being established by affirmative proof that such incompetency was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge."). Not only is there is no evidence that Armstrong Relocation knew or should have known, that its employees would act negligently, there is no evidence of negligence.

## IV. Conclusion

This is simply a case involving a domestic dispute between Mr. Davis and Ms. Dumas that has become so all-encompassing that their anger at each other has spilled over to Armstrong Relocation without legal basis. Ms. Dumas hired Armstrong Relocation to move property out of her house, a job which was completed in approximately four hours. Armstrong received full payment, in cash from Ms. Dumas, completing the business transaction. Alabama law shields from liability bailees who transport and deliver property in good faith and furtherance of its business. This is true even if the person from whom the goods received had no authority to dispose of them and the person to whom the goods were delivered had no authority to receive them. Accordingly, no cause of action for conversion can lie against Armstrong Relocation.

There is similarly no evidence that Armstrong Relocation had any duty to Mr. Davis such that a cause of action for negligence can lie. Further, there is no evidence that the Armstrong Relocation employees engaged in negligent conduct or that Armstrong Relocation knew or should have known that the movers would engage in any conduct complained of by the plaintiff. Accordingly, summary judgment on all negligence claims is due to be granted.

WHEREFORE, THE FOREGOING PREMISES CONSIDERED, the defendant Armstrong Relocation, LLC respectfully requests this Honorable Court grant summary judgment in its favor as to all claims brought by the plaintiff.

/s/ C. Winston Sheehan, Jr.
C. WINSTON SHEEHAN, JR.

/s/ Emily C. Marks
EMILY C. MARKS
Attorneys for Armstrong Relocation, LLC


OF COUNSEL:
BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama 36102-2148
Phone: (334) 387-7680
Fax: (334) 387-3222

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2006, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following registered persons and that those persons not registered with the CM/ECF system were served by U.S. mail:

George Lamar Beck , Jr glb@chlaw.com, terrie@chlaw.com;roxie@chlaw.com

Terrie Scott Biggs tsb@chlaw.com, julie@chlaw.com

Joint Chambers jointchambers@almd.uscourts.gov

Wallace Damon Mills wmills@ci.montgomery.al.us

Michael W. Rountree mwrra@knology.net, rtreesigpc@aol.com

Jeffrey Wilson Smith jsmith@slatenlaw.com, cmclean@slatenlaw.com

Judy B. Van Heest jvanheest@beersanderson.com, brenda@beersanderson.com

/s/ Emily C. Marks
OF COUNSEL