IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISIN

| | |
|---|---|
| **THEODORE DAVIS,**<br>        **Plaintiff,**<br>vs.<br>**ARMSTRONG RELOCATION, Lln,<br>EDNA DUMAS, CITY OF<br>MONTGOMERY, et. al.,**<br><br>        **Defendants** | ) Case No.: 2:05-cv-632-WKW<br>)<br>) **THE CITY OF MONTGOMERY'S AND**<br>) **OFFICER SHELLEY WATTS'S BRIEF IN**<br>) **SUPPORT OF MOTION FOR SUMMARY**<br>) **JUDGMENT**<br>)<br>)<br>)<br>)<br>)<br>) |

COME NOW The City of Montgomery and Officer Shelley Watts, by and through undersigned counsel, and, in support of their Motion for Summary Judgment, say as follows:

**PROCEDURAL HISTORY**

This case was originally filed in the Circuit Court of Montgomery County. The Complaint was amended to add the City of Montgomery and officer Shelly Watts as defendants and alleging, among other things, a claim under 42 U.S.C. §1983, after which the said added defendants removed this case to this Court. On or about August 3, 2005, Plaintiff amended his Complaint again, the Amended Complaint alleging conversion, trespass to chattel (pleaded as "destruction of personal property"), false arrest, abuse of process, negligent training and supervision (pleaded as "improper" training and supervision), fraud, slander, violations of due process, and negligence.

**FACTS COMMON TO THE PARTIES**

On or about the morning of January 18, 2004, an unknown Montgomery police officer was dispatched to 207 Rosedon Drive, Montgomery, AL 36116, in response to a call regarding a property dispute between Plaintiff Theodore Davis and Defendant Edna Dumas. *Amended*

1

*Complaint, Doc. 7, Item 6.* Upon arriving at the residence, the officer learned that Plaintiff Davis claimed to be owner property and residence in question. *Amended Complaint, Doc. 7, Item 30.* He alleged that he was the owner of the property and that he had made payments on the house in the past; however, he could produce no documentation showing any indicia of ownership or a right to possession because they were in the house. *Amended Complaint, Doc. 7, Item 30-31.*

By contrast, Defendant Dumas claimed to be the owner of the property in question, and she presented to the officer a deed showing her ownership. *Deposition of Theodore Davis, 61:1-9,* (attached hereto as Exhibit 1). She also told the officer that she wanted Theodore Davis off of her property. *Deposition of Theodore Davis, 61:18-19* (Exhibit 1). The officer then advised Plaintiff Davis that he needed to vacate the premises. *Amended Complaint, Doc. 7, Item 31.*

On or about the afternoon/evening of January 18, 2004, Officer Shelley Watts was dispatched to the aforementioned address. *Amended Complaint, Doc. 7, Item 38.* Officer Watts was dispatched due to Plaintiff Davis contacting the police station and stating that he needed to retrieve some personal property (i.e. personal belongings, money, medicine, clothing, papers) from the residence. *Amended Complaint, Doc. 7, Item 37-38.* Officer Watts made contact with Defendant Dumas, who was inside the residence, and talked with her. *Amended Complaint, Doc. 7, Item 41.* She gathered some of Plaintiff Davis's medication and agreed to allow him to come back and retrieve his property between the following Tuesday and Thursday of the next week. *Amended Complaint, Doc. 7, Item 42-43.*

**ARGUMENT**

**I. Qualified Immunity**

Plaintiff has alleged that Officer Shelley Watts, a Montgomery police officer, violated his Fourteenth Amendment right to due process in depriving him of certain real and personal property while acting under color of state law. Plaintiff seeks redress under 42 U.S.C. §1983.

Some governmental officials are afforded, under federal law, certain qualified substantive immunity from civil liability for acts performed while carrying out their duties as government officials. In dealing with the issue of qualified immunity of a police officer, the U.S. Supreme Court has said the following:

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Ibid. As a result, "we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991) *(per curiam).*

Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001).

"To be shielded from suit by qualified immunity, a public official must first show that he was acting within the scope of his discretionary authority." Vinyard v. Wilson, 311 F.3d 1340, 1336 (11th Cir.2002). There is no dispute in this case that the officer in question—Shelley Watts—was acting within the scope of his discretionary authority. Plaintiff avers in item 57 of

his Amended Complaint that the officer was acting as an "agent for the city," and nowhere is it alleged that he exceeded the scope of that agency. *Amended Complaint*, document ___ item 57. Nevertheless, the Amended Complaint clearly illustrates that officer Watts was called out to Rosedon Drive by the plaintiff; that he spoke to both parties, tried to work a resolution to the dispute, and at the insistence of Edna Dumas, who presented the officer with indicia of ownership to the house, asked the plaintiff to leave the premises. Officer Watts asked the plaintiff to produce some documentation showing that he had a right to be on the property and the plaintiff could produce none.

    Moreover, Edna Dumas was able, later on, to satisfy a municipal magistrate that sufficient probable cause existed to issue an arrest warrant for Theodore Davis for trespass to that very same property. Under the circumstances, officer Watts had little choice but to ask Mr. Davis to leave the property.

    Plaintiff also alleges that officer Watts was present when his personal property was placed on the curb by the moving company, and that he allowed other people to carry that property away. What would the plaintiff have the officer do under those circumstances? The officer could not have taken possession of a house full of furniture and possessions, even if he had had the legal right to. He had a duty to patrol his district for the entirety of his shift; he could not have stood over the property all day until the plaintiff, who was out of town, could come and get it. And the homeowner—Edna Dumas—had a right to remove the personal property from her house.

    Once the officer has established that he was acting within the scope of his discretionary authority, "'the burden then shifts to the plaintiff to show, first, facts establishing that a constitutional violation occurred, and second, that the constitutional right was clearly established

4

at the time of the violation.'" McCray v. City of Dothan, Not Reported in F.3d, 2003 WL 23518420 (11th Cir.2003) *citing* Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. 2508, 2513, 153 L.Ed.2d 666 (2002); *see also* Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001).

First of all, the plaintiff has not and cannot show that he had a clearly established constitutional right at the time of the violation. In order to do so, the plaintiff must show that the constitutional right was "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.... [I]n the light of pre-existing law the unlawfulness must be apparent.'" Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. at 2515, 153 L.Ed.2d 666 (2002) *citing* Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). As to the house itself, the defendant Edna Dumas presented the officer with evidence of title to the house. The plaintiff, however, was unable to show anything to establish that he had a right to possession of the property.

As to the personal property, there is no clear course of action for the officer and no law to guide him in this situation—one where the owner of real property is removing the personal property of another, but the suspected owner of the personal property is not present to take possession of it. The "unlawfulness," therefore, of his action was no more "apparent" to him then than it is to this writer at the time of the preparation of this brief, even after the benefit of legal research. Hope v. Pelzer, 536 U.S. 730, 122 S.Ct. at 2515, 153 L.Ed.2d 666 (2002).

In other words, the "defendant's actions [do not] violate clearly established law," even when viewed in the light most favorable to the plaintiff. Nolen v. Jackson, 102 F.2d 1187, 1190 (11th Cir.,1997); *see also* Bennett v. Parker, 898 F.2d 1530, 1535 n.2 (11th Cir.1990); *cert denied* 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). And "[i]mmunity should be granted

5

if, at the time of the official's actions, the law was unclear or the official could have reasonably believed his actions were lawful. *see* Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir.1989).

Moreover, it is elementary that, in order for the plaintiff to succeed on a §1983 due process claim, he must show that the officer, himself, or in concert with others, had a direct role in depriving him of his property; that he, somehow, used color of state law to effect the said deprivation. The allegation is that the officer failed to intervene, not that he took some positive action in using his authority. "Both the Supreme Court and the Eleventh Circuit have stated that "a plaintiff cannot strip a ... defendant of his qualified immunity by citing to general rules or abstract rights.'" Pace v. Platt, Not Reported in F.Supp.2d, 2002 WL 32098709 (N.D. Fla.,2002) *citing,* Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987); Walker v. Schwalbe, 112 F.3d 1127, 1132 (11th Cir.1997), *cert. denied,* 523 U.S. 1117, 118 S.Ct. 1794, 140 L.Ed.2d 935 (1998). Rather, "[q]ualified immunity focuses on the actual, specific details of concrete cases." Id.

Officer Shelley Watts is, therefore, entitled to qualified immunity on all federal claims alleged in this lawsuit and should be granted a summary judgment thereon.

**II. Discretionary Function Immunity - §6-5-338**

Likewise, officer Watts is entitled to discretionary function immunity on the state law torts alleged against him. In Alabama, police officers are afforded immunities from tort liability under §6-5-338(a) Ala. Code (1975). That section states that, "[e]very peace officer, except constables, who is employed or appointed pursuant to the Constitution or statutes of this state . . . shall at all times be deemed to be officers of this state, and as such shall have immunity from tort

liability arising out of his or her conduct in performance of any discretionary function within the line and scope of his or her law enforcement duties." §6-5-338(a) Ala. Code 1975.

"Alabama law has defined 'discretionary acts' as '[t]hose acts [as to which] there is no hard and fast rule as to course of conduct that one must or must not take' and those requiring 'exercise in judgment and choice and [involving] what is just and proper under the circumstances.' " Blackwood v. City of Hanceville, ___ So.2d ___, 2006 WL 254071 (Ala.2006) *citing* Montgomery v. City of Montgomery, 732 So.2d 305, 310 (Ala.Civ.App.1999). Discretionary acts require "constant decision making and judgment." Phillips v. Thomas, 555 So.2d 81, 85 (Ala.1989); L.S.B. v. Howard, 659 So.2d 43, 44 (Ala.1995). Based upon the facts as Plaintiff has asserted them, officer Watts was faced with a situation where both parties were claiming ownership of the real property in question and the one with some indicia of that ownership wanted the other off of the property. Mr. Davis was claiming ownership of the house as well as the contents of the house and wanted, at very least, to re-enter the house to take possession of the personal property. Later that day, he went back to the residence to find that the purported title holder to the property was removing the contents from the house.

There is no "hard and fast rule as to [the] course of conduct" that officer Watts should have taken, either with regard to the house or the personal belongings. The situation required the very "decision making and judgment" from which the statutory immunity seeks to insulate police officers. His primary function, as a police officer, was to ensure the physical safety of both of the parties present. At the same time, he had to make decisions about how best to handle the dispute over the property.

Unless the plaintiff can now show that officer Watts acted "fraudulently, in bad faith, or with malice or willfulness," the Court should properly find that officer Watts is entitled to the

7

immunity set out in §6-5-338(a) and grant him summary judgment on all state law claims. Moore v. Adams, 754 So.2d 630, 632 (Ala.1999).

Furthermore, the City of Montgomery, as Watts's employer is afforded that same immunity, vicariously. This is clearly established by §6-5-338(b) where it states that the section "is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers. §6-5-338(b) Ala. Code (1975). The officer was on duty, performing within the line and scope of his duty and, as such, both he and the City are entitled to discretionary function immunity.

**III.  Municipal Liability under 42 U.S.C. §1983**

The law is clear that a municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior. Monell v. Department of Social Services of New York City, 436 U.S. at 663, 98 S.Ct. at 2022, 56 L.Ed.2d 611 (1978). "Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability. Griffin v. City of Opa-Locka, 261 F.3d 1295 (11th Cir.2001) *citing* Floyd v. Waiters, 133 F.3d 786, 793 (11th Cir.1998). In order to prevail against the city under 42 U.S.C. §1983, then, the plaintiff must show that the city had in place a policy or custom which proximately caused the constitutional deprivation complained of. Monell v. Department of Social Services of New York City, *supra*. The plaintiff has failed to allege any such policy or custom, and the City of Montgomery, therefore, is entitled to summary judgment on the claims made under §1983.

**IV. False Arrest**

False arrest is also known as false imprisonment under Alabama law.  *See* Thompson v. City of Clio, 765 F.Supp. 1066 (M.D.Ala.,1991); Whitlow v. Bruno's, Inc., 567 So.2d 1235 (Ala.1990).  False imprisonment is codified by §6-5-170 of the Alabama Code and "consists of the *unlawful* detention of the person of another for any length of time whereby he is deprived of his personal liberty." §6-5-170 Ala. Code (1975) (emphasis added).  The plaintiff in this case alleges that he was arrested by unknown agents of the City of Montgomery pursuant to a warrant issued upon the complaint filed by Ms. Dumas.  "The law in Alabama is clear that a plaintiff is not entitled to recover for false arrest or imprisonment where he or she is arrested pursuant to a valid warrant issued by a lawfully authorized person." Blake v. Barton Williams, Inc., 361 So.2d 376 (Ala. Civ. App.1978).  "Under such circumstances, 'neither the arrest nor the subsequent imprisonment is 'false,' and, as a consequence, the complaining party's action must be one for malicious prosecution.'" Montgomery v. City of Montgomery, 732 So.2d 305, 308 (Ala.Civ.App.,1999). c*iting* Blake v. Barton Williams, Inc., 361 So.2d at 378 (Ala.Civ.App.1978).  Unless the plaintiff can show, then, that the warrant pursuant to which he was arrested was flawed or invalid in some way, Defendants are entitled to summary judgment on the false arrest claim.

As the false arrest claim may apply to the City of Montgomery, the Alabama Supreme Court has "repeatedly held that 'a municipality is not responsible for the acts of its officers, agents, or servants in making false arrests or for instituting a malicious prosecution.'" Dickinson v. City of Huntsville, 822 So.2d 411, 418 (Ala.2001). *citing* Neighbors v. City of Birmingham, 384 So.2d 113, 113 (Ala.1980); Ott v. Everett, 420 So.2d 258, 260 (Ala.1982).

**V.  Abuse of Process**

In item 60 of Plaintiff's Amended Complaint, he requests punitive damages from the City of Montgomery for abuse of process.  Abuse of process has been defined by Alabama courts as "the wrongful use of process after it has been issued." Willis v. Parker, 814 So.2d 857, 865 (Ala.2001).  It is best viewed as the opposite to malicious prosecution, which is the wrongful issuance of said process. Id.  To establish a claim for abuse of process, the plaintiff must prove: "(1) the existence of an ulterior purpose; 2) a wrongful use of process, and 3) malice." Id. "'[T]he [ulterior motive] must culminate in an actual abuse of the process by *perverting it to a use to obtain a result which the process was not intended by law to effect . . .*' ' If the action is confined to its regular and legitimate function* in relation to the cause of action stated in the complaint *there is no abuse*.'" Id. c*iting* Dempsey v. Denman, 442 So.2d 63, 65 (Ala.1983)(emphasis in original); *see also* 72 C.J.S. *Process* § 120, pp. 1190-91 (1951); 1 Am.Jur.2d *Abuse of Process §13 (1962).*

In the case at bar, the plaintiff has not alleged that the process issued in this case (the arrest warrant) was used for anything other than its intended purpose: to affect his arrest.  Without more, the plaintiff has failed to show that there is a genuine issue of material fact, and the defendants are entitled to a judgment as a matter of law.

**VII.  Fictitious Party Pleading**

Plaintiff has plead that the identity of the first officer who was dispatched to the Rosedon Drive address on January 18 is unknown to him.  This, according to the Amended Complaint is the officer to whom the defendant Dumas presented her deed to the house.  Fictitious party practice is not permitted under the Federal Rules of Civil Procedure. New v. Sports &

Recreation, Inc. , 114 F. 3d 1092, 1094 n.1 (11th Cir 1997); Edwards v Alabama Department of Corrections, 81 f. Supp. 2d 1242, 1257 (M.D. Ala. 2000); Rommell v. Auto Racing Club of America, Inc., 964 F.2d 1090, 1098 n.14 (11th Cir.1992). To the extent that such fictitious party may be an employee or agent of the City of Montgomery, the City of Montgomery objects to the pleading of fictitious parties and moves this Court to dismiss the claims against the said unknown individual for failure to state a claim upon which relief may be properly granted.

**VIII. Intentional Torts**

Plaintiff has alleged various intentional torts against the City of Montgomery. § 11-47-190, Ala.Code (1975), provides that municipalities are immune from liability for intentional torts, and that they are liable only for the neglect, carelessness, or unskillfulness of their agents, officers, and employees. Dollar v. City of Ashford, 677 So.2d 769, 770 (Ala.Civ.App.1995).

**IX. Punitive Damages**

Plaintiff has prayed for punitive damages on his state law claims of negligence and outrage. §6-11-26 of the Alabama Code says that "[p]unitive damages may not be awarded against the State of Alabama or any county or municipality thereof, or any agency thereof, except any entity covered under the Medical Liability Act now codified as Section 6-5-480 et. seq., or any acts amendatory thereto." §6-11-26 Ala. Code (1975). The United States Supreme Court has declared that district courts exercising pendent jurisdiction over state law claims should apply state substantive law to those pendent claims because there is no federal common law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 77, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

The City of Montgomery, then, is entitled to summary judgment on Plaintiff's claims for punitive.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Id. at 323. The movant can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing, or pointing out to, the district court that the non-moving party has failed to present evidence in support of some elements of its case on which it bears the ultimate burden of proof. *see* Id at 322-324.

Once the moving party has met its burden, Rule 56(e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." Id. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Rule 56(c) Fed.R.Civ.Pro.,

12

After the non-moving party has responded to a motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  <u>Yannella v. City of Dothan</u>, 66 F. Supp. 2d 1233 (M.D. Ala. 1999).

## CONCLUSION

The facts, taken, for the purposes of this motion, as they are plead by the plaintiff, do not establish a genuine issue that is material to the case.  The pleadings themselves, along with the deposition of the plaintiff only, fail to establish a right to recovery as a matter of law.  The City of Montgomery and officer Shelley Watts are entitled thereby to a summary judgment on all issues addressed above.

At a minimum, the City and Watts are entitled to qualified immunity on the federal law claims presented and statutory discretionary function immunity on the state law claims.

Respectfully submitted,

/s/ Wallace D. Mills
Wallace D. Mills (MIL 090),
Attorney for the City of Montgomery

OF COUNSEL:
City of Montgomery Attorney's Office
P.O. Box 1111
Montgomery, AL 36101-1111
Phone: (334) 241-2050
Fax: (334) 241-2310

## CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of March, 2006, I electronically filed the foregoing with the Clerk of the court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

        Michael Rountree, Esq.
        448 Saint Lukes Dr.
        Montgomery, AL 36117

        George L. Beck, Jr. Esq.
        P.O. Box 2069
        Montgomery, AL 36102-2069

        Winston Sheehan, Jr. Esq.
        Hon. Emily C. Marks
        Ball, Ball, Mathews & Novak, P.A.
        P.O. Box 2148
        Montgomery, AL 36117

        Jeffrey W. Smith, Esq.
        Slaten & O'Conner, P.C.
        105 Tallapoosa St., Suite 101
        Montgomery, AL 36104

        Judy B. Van Heest, Esq.
        Beers Anderson Jackson Patty & Van Heest, P.C.
        P.O. Box 1988
        Montgomery, AL 36102-1988

and I hereby certify that I have also mailed by United States Postal Service the document to the above-named non-CM/ECF participants:


                                            <u>/s/ Wallace D. Mills</u>
                                            OF COUNSEL