**In The United States District Court**
**For The Middle District of Alabama**
**Northern Division**

| | | |
|---|---|---|
| Theodore Davis, | ) | Answer To Motion for |
| Plaintiff, | ( | Summary Judgement |
| v. | ) | |
| | ( | |
| Armstrong Relocation, Lln | ) | Case No. 2:05-cv-632 |
| Edna Dumas, et al | ( | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION
## FOR SUMMARY JUDGEMENT

COMES NOW, the Plaintiff, by and through his attorney of record and would oppose the Defendant's motion for summary judgement and in support of which would show unto the Court as follows:

### INTRODUCTION

The essential issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that on party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-252 (1986). The burden is on the moving party to show the absence of a genuine issue as to any material fact, and in deciding whether the movant has met the burden the court must view the moving party's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970). Once the movant meets its initial burden under Rule 56(c), then the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. V. Zenith radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d. 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted) (cited in *Allen v. Tyson Foods, Inc.* 121 F.3d. 642, 645 (11th Cir. 1997). " If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.,* 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.,* 750 F.2d. 838, 841 (11th Cir. 1985)). The

Plaintiff avers that during his deposition he presented sufficient evidence to defeat the Defendant's motion for summary judgement. On pages 174- 205 of the Plaintiff's deposition, Mr. Davis testified to events that led to his being forced out of the home, his property being given to the control of another individual who was not the rightful owner, then said property being placed in the yard and given away to strangers. Mr. Davis also provided names of witnesses who would testify that he called the police, on at least two different occasions. The fist to get them to make Ms. Dumas and her nephew and his friends leave, and the second to get medications from his home that the police made him surrender to Ms. Dumas, who by her on statements lived in another state at the time. Mr. Davis also provided the name of witnesses in his depo that would testify that the property was set out on the street and that he had taken pictures of his property which was placed in a dumpster (which he could not go near because of orders of the police) and then destroyed by the defendants by intentionally pouring of oils and/or other agents on the personal belongings and/or papers of Mr. Davis with the intention that said items be destroyed and that said items were taken to the city land fill. On page 156 of Plaintiff Davis's deposition it reads as follows:

Q.      And how long had you lived in Rosedon Drive?

A.      From 1994 – I don't remember the month 1994 to January – I mean, January 18th of this year.

On Page 36 of a Deposition of Edna Sirena Dumas, taken March 2, 2004 before Susanne Pastor by Rodney H. Hines for case involving Mr. Davis and his employer, Greyhound Lines, Inc., Ms. Dumas stated as follows:

Q.      I think you said earlier that you owned a home at 207 Rosedon, is that correct?

A.      That is absolutely correct, yes, sir.

Q.      Who lived in that house from 1994 until the end of 2003?

A.      Theodore Davis.

Q.      Did anyone other than him live there?

A.      I guess his women. When I come visit, everything would be nice. I mean, Nothing would be visible for me to see.

Q.      So you didn't see anything that was visible that anyone else was living there?

A.    Except Kotex and Tampons.  And hair dryers.

On page 38 of the depo, Ms. Dumas stated the following:

Q.    What did he owe you?

A.    I charged him – if I was charging him $500 a month for ten years, that would be like $ 80,000.

On pages 41 and 42 Ms. Dumas stated as follows:

Q.    Did you or your friends remove any of that furniture and put it in the yard?

A.    Did me or my friends, no, I did not touch it.  Nor did my friends touch it.

Q.    Who put the furniture outside?

A.    The moving company.

Q.    And did you hire that company?

A.    Yes, I did.

On page 43, Ms. Dumas stated the following about what the police officer stated and did:

Q.    Did they remove everything that was in there that was his?

A.    Listen, the police told him to take what he wanted to take.  He took what he wanted to take.  He called the police on me and the police told him to take what he wanted to take and he took what he wanted to take.

Q.    Did the police officer give him only five minutes to take his items out of the house?

A.    No, sir.  They gave him longer than five minutes.

Q.    How many minutes?

A.    Actually, the police said I think I've been here an hour now or more, let's see if he's ready to go.  And I don't know what he told the police.

On page 53, Ms. Dumas stated:

Q.    Have you signed a warrant against anybody?

A.    Against Theodore Davis.

Q.    And what was the warrant for?

A.    Because the police asked him not to come back to that property, don't come back to this property. And he came back.

The City of Montgomery and Officer Shelley Watts, now brings this motion before the Court asking for relief under the theory that the officer was protected by qualified substantive immunity. The City claims that officer Watts was acting within the scope of his individual discretionary authority. They claim that there is no dispute that officer Watts was acting within the scope of his discretionary authority based on the pleadings in which the city states that officer Watts was shown a deed by Ms. Dumas and Mr. Davis could not show anything to support his claim of having lived in the home for nearly ten years. The City makes one mistake in their argument. Mr. Watts was not the officer to evict Mr. Davis, that was done by another officer whom the city cannot find a record of dispatching to the home. This officer is the agent of the city who first started the process which deprived Mr. Davis of his personal property and his rights to a hearing on the matter. It was Officer Watts who intentionally advised Mr. Davis that his property was not being taken by third parties and who was present during the commission of events which resulted in Mr. Davis property being stolen and/or destroyed. The complaint made by Mr. Davis and filed with the court disputes this issue as but froth by the City. The laws of the state of Alabama do not give the police or an officer in their employ the right to take another's property and surrender it to another party without a hearing.

In this case the City would like the Court to believe that an officer has the discretionary power to force a person who has been living in a house for nearly ten (10) years to vacate said home after being only allowed five (5) to sixty (60) minutes, depending on whose version of the events you use, both Mr. Davis and Ms. Dumas stated that the officer forced Mr. Davis to leave his home, allowing him less than one hour to gather his belongings and leave or face being arrested. Mr. Davis in his complaint stated that the City was responsible for the training and supervision of the officers and that their failure to provide proper training is a policy and/or practice of the Montgomery Police Department.

The Courts have held that a single incident may, however, be indicative of a policy or practice that can give rise to section 1983 municipal liability. See, e.g., Pembaur v. Cincinnati, 475 U.S. 469, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (death resulting from policy of using whatever force was necessary); Anderson v. City of Atlanta, 778 F.2d 678 (11th Cir.1985) (failure to give medical care because of policy of understaffing). In Pembaur, the Supreme Court said that "it is plain that municipal **liability** may be imposed for a single decision by municipal

policymakers under appropriate circumstances." 475 U.S. at 480, 106 S. Ct. at 1298. These "appropriate circumstances" are "where -- and only where -- a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483, 106 S. Ct. at 1300.

The City is trying to rewrite what the courts have stated in the past regarding the doctrine of qualified immunity. The Courts have stated qualified immunity protects government officials from civil damage suits for official conduct that does not violate clearly established law of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity "`gives ample room for mistaken judgments' by protecting `all but the plainly incompetent or those who knowingly violate the law.'" Hunter v. Bryant, 502 U.S. 224, 229 (1991) (quoting Malley v. Briggs, 475 U.S. 335, 341, 343 (1986)). Although an individual defendant may be shielded by state immunity or by good faith immunity nothing in section 1983 keeps a court from tracing the causal link even through an immune party to reach a responsible governing entity. Garcia v. Salt Lake County, 768 F.2d 303 310 (10th Cir. 1985).

In this case the officers should have clearly known, based on statements made to the officer, (page 43 to 45 of Ms. Dumas Depo) (page 47 & 48 of T. Davis's depo) that Mr. Davis had been living there for nearly ten years that he had a right to be in the home because he thought he was buying the home from her (Page 37 & 38 of the depo of Ms. Dumas). It was apparent that Ms. Dumas had become upset and was mad at the tenant at him for other personal reasons and she had decided that he had to leave. But Ms. Dumas and Mr. Davis provided statements that an unknown officer from the City arrived and had Mr. Davis leave his home between 8:30 and 9:30 on a Sunday morning January 18, 2004. Then after repeated calls to the police department an officer was dispatched to meet Mr. Davis to help him get some of his belongings from his former home. It is alleged that this officer was officer Watts. (Page 168 T Davis Depo line 12 to line one on page 170) These officers did not have the power to make a legal ruling as to ownership, resolve contract questions or disputes, or the right to take the personal property and give it to another as the unknown officer did in this matter.

The City is now trying to co-mingle the facts or statements made in an attempt to get this

Court to grant them relief. The City of Montgomery dispatch officer has stated along with the arresting officers for the Trespass that they have no record of the happenings on Sunday morning but the events of Sunday evening. If that is the case then when Mr. Davis made a call for help, which was responded to by an officer from the City. Due to the policy of the City this record was not recorded or the Police Department does not want to release the information, either way the end result is that Mr. Davis was damaged by the policy of the City and the acts of an unknown officer. (Page 176 line 12 to line15 of page 177 of T. Davis depo)

The city has a policy of recording dispatches but the policy falls short of making sure the records or correct and proper. Not recording these kinds of calls and allowing their officers to make decisions on their own regarding legal matters is the result of the officers to follow policy. This resulted in no report being available to Mr. Davis or to any other party. Being Mr. Davis had placed the call for the police to protect himself from the landlord. The officer should have had notice that this was a civil matter and acted accordingly. Instead, the unknown officer decided to impress the female landlord and evicted the tenant without a hearing, without any kind of due process, or even allow him reasonable time to gather his belongings. He made Mr. Davis leave his home and surrender his personal belongings to the co-defendant in this matter or face going to jail. (Page 185 & 186 of T. Davis depo.)

The City attempts to take both sides of this matter and claim that after the (improper) eviction by the unknown officer on Sunday morning that Ms Dumas later (Sunday evening) advised officer Watts that she would allow Mr. Davis to return and get his property between Tuesday and Thursday of the following week and that because she had a deed to the property she had all legal rights to take control of the contents of the home and use them as she saw fit. Lieutenant Signore, has advised Mr. Davis that there was no record of the call to the residence on Sunday morning around 8:30 in the morning. They could only find the record of Mr. Davis calling for assistance to get some of his personal belongings and officer Watts meeting him there at or about 5:28 in the evening. (Page 176 & 177 of the Depo of Mr. Davis)

For some reason, officer Watts was present on Monday when Ms. Dumas decided to remove the property from the house without any notice to Mr. Davis who had been instructed not to return to the home until Tuesday by officer Watts. Officer Watts was present and talked to

Mr. Davis on a cell phone. Officer Watts intentionally gave false information to the Plaintiff as well as turning a blind eye to the property being taken by other individuals that Officer Watts should have known they had no claim to the property (Page 188 line 3 through page 196 line 3)

Watts nor the City has seen fit to explain or mention that officer Watts was present while Mr. Davis's property was being placed on the sidewalk and in the yard on Monday. A Ms. Linda Grant called Mr. Davis and advised him that his property was being hauled off by different people and that he should get there as soon as possible. He told her that he could not come to the property because of instructions from Officer Watts. (Page 188 line 3 through 11 Davis Depo) Mr. Davis then began attempts to call different people. One of those people was a Ms Crum who agreed to go to the home and check out what was taking place. When she got there she, advised Mr. Davis that his property was being taken by other people. He advised her that he was going to call the police. That is when she informed him that an officer was present. He asked her to give the officer the phone. (Pages 187 to 192 Davis Depo.)

Mr. Davis then attempted to talk to officer Watts and tried to advise him that the property was his and would he stop the people from taking it. Mr. Davis was advised by the officer that "sir, I don't see anybody getting anything. Everything is okay." (Page 192 starting on line 10 ending on page 195 line 7 of Davis Depo.) Once the officer handed the phone back to Ms. Crum, she advised Mr. Davis that the officer was lying, that people were loading things in trucks and going through the bags and taking whatever they wanted. (Page 194 line 6 to 15)

The City argues in their brief that and officer could not be expected to stay and protect the household furniture and belongings of Mr. Davis because he had his district to protect. The Plaintiff alleges that the officer not only exceeded his authority but intentionally refused to prevent a crime taking place in his presence. It is true that he could not guard the property for Mr. Davis but he could have advised the people present that the property belonged to another individual and that they should not take the property. If that failed then he could have arrested those taking the property while he remained at the home. However, officer Watts did nothing, he just turned a blind eye and condoned the taking of the property. As if this was not enough, the office even advised the Plaintiff that the property was not being taken. In *Roth*, the Court pointed out that "[t]he Fourteenth Amendment's procedural protection of property is a safeguard

of the security of interests that a person has already acquired in specific benefits. These interests - property interests - may take many forms." _Roth_, 408 U.S. at 576. Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." _Id._ at 577. "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." _Id._ When, as here, a plaintiff contends that a constitutionally protected property interest is created by a state statute, we have held that such an interest arises when "the regulatory language is so mandatory that it creates a right to rely on that language thereby creating an entitlement that could not be withdrawn without due process." _Cosco v. Uphoff_, 195 F.3d 1221, 1223 (10th Cir. 1999) (per curiam).

The City further argues that the claim of false arrest was and is improper that being the clerk for the city decided that the was grounds for a warrant to be issued then the city is not liable. In the complaint filed before the Court the claim is that the warrant should not have been granted because the Plaintiff was present with an officer to retrieve his personal property and not criminal trespass. Therefore the warrant was flawed and should not have been issued and if the city provided proper training or performed proper review of claims made this warrant would not have been issued. Mr. Davis claims that because of the city's failure to train their staff properly and because of the city's desire to have cases brought before the city court so that the city can be rewarded by the payment of fines, Mr Davis was arrested for trespass even though he was present with officer Watts and was following instructions given to him by the officer from earlier in the morning on Sunday. The City's policy of issue the warrant and let the court figure it out is the reason that Mr. Davis was arrested unjustly and falsely detained and had to post bond.

The City further claims that the law does provide guidance to the officers regarding personal property and that there is no law to guide him in this situation. Federal law states as follows: " Any person subject to this chapter who wrongfully takes, obtains, or withholds, by any means, from the possession of the owner or of any other person any money, personal property, or article of value of any kind--(1) with intent permanently to deprive or defraud another person of

the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, steals that property and is guilty of larceny; or (2) with intent temporarily to deprive or defraud another person of the use and benefit of property or to appropriate it to his own use or the use of any person other than the owner, is guilty of wrongful appropriation. 10 U.S.C. § 921(a) (emphasis added). "Another person" contrasts with "any person" that begins the section, which, like "whoever" in § 513(a), is anyone subject to prosecution under the law.   The Code of Alabama § 13-8-1 (1) states DECEPTION occurs when a person knowingly: (a). Creates or confirms another's impression which is false and which the defendant does not believe to be true;   and (2) states To "DEPRIVE ..." means: (a.) To withhold property or cause it to be withheld from a person permanently or for such period or under such circumstances that all or a portion of its use or benefit would be lost to him or her.  Section 13-8-2 of the Code of Alabama states: Theft of property - Definition. A person commits the crime of theft of property if he or she:  (1) Knowingly obtains or exerts unauthorized control over the property of another, with intent to deprive the owner of his or her property;  (2) Knowingly obtains by deception control over the property of another, with intent to deprive the owner of his or her property;

While this officer may not have a background regarding personal property the officer most likely has heard of the City statutes and the laws of the State of Alabama regarding theft as well as the Fourth Amendment which deals with personal property and the right to privacy from improper search and seizure.  The courts have stated "Fourth Amendment's protections work only by satisfying a "twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as `reasonable."  In this case the owner, Mr. Davis did have a right to expect his privacy and peaceful enjoyment of his property.  He even called the police when the Defendant, Dumas and her strong arm friends arrived at the home, his home for nearly ten years.

The mere fact that the writer of the City's brief states that he does not see the "unlawfulness" of the action after of the officers is something that a jury should be allowed to determine.  I am sure that if the positions were reversed and Mr. Davis had been given property belonging to the City by the Officer, the City would be extremely upset that their property had been taken unjustly, improperly and they would be stating that no reasonable person much less

and officer of the City should be allowed to take property from one person and give it to another. Instead of protecting Mr. Davis and his property, the City arrested Mr. Davis on Tuesday when he attempted to report that his property had been disposed of by the defendant Dumas and taken by others while officer Watts watched. (Page 208 through 211 Davis Depo)  The city claims that Ms. Dumas appeared before one of their municipal magistrates (a clerk not a judge) as per § 12-14-2 and that upon her statements to them that Mr. Davis had come back to the house on Sunday night with an officer to get some of his additional belongings.  The clerk/magistrate issued a improper and flawed warrant for trespass against Mr. Davis.  The City forgot to mention that their municipal judge threw the case for trespass out and found Mr. Davis to be not guilty while stating that this appeared to be an improper eviction.

The city stated in their own argument that the officer did not have the right to take control of a house full of furniture and possessions and keep people from taking the property because he had a duty to patrol his district and Ms. Dumas had the right to remove the furniture from her house.  The city seems to forget that their officer is the reason that Ms. Dumas had control of the property in the first place.  If nopt for the improper acts of the officer which the City elects to keep hidden and the additional acts of Officer Watts as an agent for the city and their acting under the color of law and their taking of the property of Mr. Davis and giving it to Ms. Duma there would not have been claims for conversion, abuse of process, false arrest, etc.  There was only one hearing held in this matter.  That was the officer for the city and the belief by the city that their officer was acting within his discretionary authority.

The laws of the United States under First and Fourteenth Amendment grants rights to a person to have certain due process regarding the taking of his property. In order to establish liability under § 1983, plaintiffs "must show by a preponderance of the evidence that: (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Johnson v. Mahoney, 424 F.3d 83, 89 (1st Cir. 2005).  The City government via and agent decided that he had a right under his authority for taking of another's property without first having a governmental interest that must be protected.  The city has demonstrated no need for immediate action but has done everything in their power to punish the owner from protecting

what was his property.   The officer must weigh the governmental interest against Mr. Davis's interest in maintaining the privacy of his home.  He failed to do that or as is more likely the actual case, the office decided that Mr. Davis had no interest to protect and that Ms Dumas was entitled to take control of the home without any hearing on the matter.

Ms. Josephine M. Perry provided a written statement from the date of the incident in which she stated that there was a moving company present, that two black males were advising people that they could have anything they wanted.  She also stated that Ms. Dumas was destroying property, cussing and showing pictures of Mr. Davis's friends to other people and that she was named as one of the people in the picture, even though she was not.  She stated that she was calling her house and cussing her.  She further stated that she and Mr Johnson watched the movers load some of the furniture onto the moving truck which they then took with them.  She further stated that this started early in the morning and went on well into the afternoon. (Affidavit of J. M. Perry)

## CONCLUSION

For the foregoing reason, the Plaintiff respectfully submits that summary judgement is due to be denied as to each and every one of the Defendant's claims, both under Federal law and the state law claims.

Respectfully submitted this the _24_ day of April 2006.

Michael Rountree (ROU009)

OF COUNSEL:

Rountree & Associates, LLC

448 Saint Lukes Drive

Montgomery, Al. 36117

334-270-8291

**CERTIFICATE OF SERVICE**

       I hereby certify that I have served a copy of the foregoing pleading upon the following counsel of record, by placing a copy of the same in the first class mail, postage prepaid on this the _24th_ day of April 2006.

Wallace D. Mills, Esq
City of Montgomery Attorney's Office
P.O. Box 111
Montgomery, Al. 36101-1111

Winston Sheehan, Jr. Esq.
Emily C. Marks, Esq.
Ball, Ball, Mathews & Novak, P.A.
P.O. Box 2148
Montgomery, Al. 36104

Jeffrey W. Smith, Esq.
Slaten & O'Conner, P.C.
105 Tallapoosa St., Suite 101
Montgomery, Al. 36104

George L. Beck, Jr. Esq
P.O. Box 2069
Montgomery, Al. 36102-2069

Judy B. Van Heest, Esq.
Beers Anderson Jackson Patty & Van Heest, P.C.
P.O. Box 1988
Montgomery, Al. 36102-1988

OF COUNSEL
