In The United States District Court
For The Middle District of Alabama
Northern Division

| | |
|---|---|
| **Theodore Davis,** ) | **Answer To Motion for** |
| Plaintiff, ( | **Summary Judgement** |
| v. ) | |
| ( | |
| **Armstrong Relocation, Lln** ) | **Case No. 2:05-cv-632** |
| **Edna Dumas, et al** ( | |
| Defendants. ) | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S ARMSTRONG'S MOTION FOR SUMMARY JUDGEMENT

COMES NOW, the Plaintiff, by and through his attorney of record and would oppose the Defendant's motion for summary judgement and in support of which would show unto the Court as follows:

### INTRODUCTION

The essential issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that on party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-252 (1986). *Bussey v. John Deere, Co.,* 531So.2d 860, 862 (Ala.1988), and whether the movant was 'entitled to a judgment as a matter of law.' *Wright v. Wright* 654 So.2d 542, 538 (Ala.1995) The burden is on the moving party to show the absence of a genuine issue as to any material fact, and in deciding whether the movant has met the burden the court must view the moving party's evidence and all factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S. Ct. 1598, 26 L.Ed.2d 142 (1970). *Bass v. SouthTrust Bank of Baldwin County,*538 So.2d 794, 797-98 (Ala.1989). Evidence is 'substantial' if it is of 'such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' Wright, 654 So.2d at 543 (*quoting West v. Founders Life Assurance Co. of Florida,* 547 So.2d 870, 871 (Ala. 1989). Once the movant meets its initial burden under Rule 56(c), then the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a

genuine issue for trial.'" *Matsushita Elec. Indus. Co. V. Zenith radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d. 538 (1986) (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted) (cited in *Allen v. Tyson Foods, Inc.* 121 F.3d. 642, 645 (11th Cir. 1997). " If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir.1992) (citing *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d. 838, 841 (11th Cir. 1985)). Review in this matter is further subject to the reviewing the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. *Wilma Corp. v. Fleming Foods of Alabama, Inc.*, 613 So.2d 359 (Ala.1993)

      The Plaintiff avers that during his deposition he presented sufficient evidence to defeat the Defendant's motion for summary judgement. On pages 174 line 7.14, P. 179 line 1.23 and pages 192 to 196 of the Plaintiff's deposition, Mr. Davis testified to events that led to his being forced out of the home, his property being given to the control of another individual who was not the rightful owner, then said property being placed in the yard and given away to strangers. Mr. Davis also provided names of witnesses who would testify that he called the police, on at least two different occasions. The fist to get them to make Ms. Dumas and her nephew and his friends leave, and the second to get medications from his home that the police made him surrender to Ms. Dumas, who by her on statements lived in another state at the time. Mr. Davis also provided the name of witnesses in his depo that would testify that the property was set out on the street and that he had taken pictures of his property which was placed in a dumpster (which he could not go near because of orders of the police) and then destroyed by the defendants by intentionally pouring of oils and/or other agents on the personal belongings and/or papers of Mr. Davis with the intention that said items be destroyed and that said items were taken to the city land fill. On page 156 of Plaintiff Davis's deposition it reads as follows:

    Q.    And how long had you lived in Rosedon Drive?
    A.    From 1994 – I don't remember the month 1994 to January – I mean, January 18th of this year.

      On Page 36 of a Deposition of Edna Sirena Dumas, taken March 2, 2004 before Susanne Pastor by Rodney H. Hines for case involving Mr. Davis and his employer, Greyhound Lines,

Inc., Ms. Dumas stated as follows:

Q. I think you said earlier that you owned a home at 207 Rosedon, is that correct?

A. That is absolutely correct, yes, sir.

Q. Who lived in that house from 1994 until the end of 2003?

A. Theodore Davis.

Q. Did anyone other than him live there?

A. I guess his women. When I come visit, everything would be nice. I mean, Nothing would be visible for me to see.

Q. So you didn't see anything that was visible that anyone else was living there?

A. Except Kotex and Tampons. And hair dryers.

On page 38 of the depo, Ms. Dumas stated the following:

Q. What did he owe you?

A. I charged him – if I was charging him $500 a month for ten years, that would be like $ 80,000.

On pages 41 and 42 Ms. Dumas stated as follows:

Q. Did you or your friends remove any of that furniture and put it in the yard?

A. Did me or my friends, no, I did not touch it. Nor did my friends touch it.

Q. Who put the furniture outside?

A. The moving company.

Q. And did you hire that company?

A. Yes, I did.

On page 43, Ms. Dumas stated the following about what the police officer stated and did:

Q. Did they remove everything that was in there that was his?

A. Listen, the police told him to take what he wanted to take. He took what he wanted to take. He called the police on me and the police told him to take what he wanted to take and he took what he wanted to take.

Q. Did the police officer give him only five minutes to take his items out of the house?

A. No, sir. They gave him longer than five minutes.

Q. How many minutes?

A.     Actually, the police said I think I've been here an hour now or more, let's see if he's ready to go. And I don't know what he told the police.

On page 53, Ms. Dumas stated:

Q.     Have you signed a warrant against anybody?

A.     Against Theodore Davis.

Q.     And what was the warrant for?

A.     Because the police asked him not to come back to that property, don't come back to this property. And he came back.

The facts as stated by the Defendant's counsel is for the most part correct. However, there are some minor issues that have little or no bearing of the case currently before the Court. The pictures were not discovered until after Ms. Dumas had gotten control of the house. The reason for coming down was because Mr. Davis had stopped calling her and her nephew had seen another woman at the house. (Dumas Depo page 5 line 14 through page 7 line 25)

Argument

In this matter the Defendant, Armstrong, hereinafter referred to as "Armstrong" claims that they are not liable for receiving and delivering goods even though the goods were received from someone who did not have the authority to dispose of them. In *S/M Industries, Inc. v. Hapag-Lloyd A.G.*, 586 So.2d 876 (Ala.1991), the Court, adopted the trial court's findings of fact, defined a bailment as follows:

"A bailment is defined as the delivery of personal property by one person to another for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it. *Farmer v. Machine Craft, Inc.*, 406 So.2d 981 (Ala.Civ.App.1981). In order for a bailment to exist the bailee must have voluntarily assumed the custody and possession of the property for another"

In this case the defendant did not voluntarily assume the custody and possession of the property for another, they simply moved furniture and belongings of a third party not present and without his permission from one spot to another at the same location. Because they did not take

the reasonable steps to ask for eviction papers, copy of court order, or call and verify that there had indeed been an eviction they failed to act as a reasonable person would have acted or exercised to the degree of care in relation to the goods which a reasonably careful man would exercise under like circumstances. In fact, they relied on the verbal statements of a party that claimed to be kin to the party that owned the house. While moving the furniture the movers were heard telling strangers that they could have whatever they wanted. (Affidavit of J. Perry) However the contract stated the property was Eddie Woods and they wanted it moved from the house to the driveway. Nothing was noted about an eviction on the papers filed with the Court in support of the motion for summary judgement, nothing about placing the property on the curb nor giving the property away. Only after this case was filed, did the movers suddenly have detailed information. Due to the failure to act as a reasonably careful man would have acted in this matter and they alleged taking and/or giving away of the Plaintiff property, the Plaintiff contends that Armstrong is liable for the damage caused to him by their failure to check and see if there was a lawful eviction or if they had the right to remove the property period.

As to the conversion claim made the Defendant Armstrong cites the law and stated that they only placed the material on the curb and therefore could not be held liable for conversion. Attached hereto is sworn statements of at least three different people who saw items from the home of Mr. Davis loaded onto the moving truck by the two movers. As per these statements there is reasonable grounds to support the denial of the Motion for Summary Judgement because of the alleged acts of the two defendants while they were moving the property of Mr. Davis.

The employer failed to properly supervise the employees that were dispatched to the site. If they had been properly trained, they would have asked for records supporting the claims made that there had been eviction. Secondly, they would not have loaded property of a third party onto their truck and then left with said property as the witnesses have stated in the sworn statements. Thirdly, if they had been trained or properly supervised the Plaintiff would not have loss his property to the movers and to other parties who were helping themselves to the property. (Affidavit of Joannie Walsh, Ms. Bryant, Ms. Lee and Ms Perry)

Ms. Josephine M. Perry provided a written statement from the date of the incident in which she stated that there was a moving company present that two black males were advising people that they could have anything they wanted. She also stated that Ms. Dumas was

destroying property, cussing and showing pictures of Mr. Davis's friends to other people and that she was named as one of the people in the picture, even though she was not. She stated that she was calling her house and cussing her. She further stated that she and Mr. Johnson watched the movers load some of the furniture onto the moving truck which they then took with them. She further stated that this started early in the morning and went on well into the afternoon. (Affidavit of J. M. Perry)

## CONCLUSION

For the foregoing reason, the Plaintiff respectfully submits that summary judgement is due to be denied as to each and every one of the Defendant's claims, both under Federal law and the state law claims.

Respectfully submitted this the 24 day of April 2006.

Michael Rountree (ROU009)

OF COUNSEL:

Rountree & Associates, LLC
448 Saint Lukes Drive
Montgomery, Al. 36117
334-270-8291

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading upon the following counsel of record, by placing a copy of the same in the first class mail, postage prepaid on this the 24th day of April 2006.

Wallace D. Mills, Esq.
City of Montgomery Attorney's Office
P.O. Box 111
Montgomery, Al. 36101-1111

Winston Sheehan, Jr. Esq.
Emily C. Marks, Esq.
Ball, Ball, Mathews & Novak, P.A.
P.O. Box 2148
Montgomery, Al. 36104

Jeffrey W. Smith, Esq.
Slaten & O'Conner, P.C.
105 Tallapoosa St., Suite 101
Montgomery, Al. 36104

George L. Beck, Jr. Esq.
P.O. Box 2069
Montgomery, Al. 36102-2069

Judy B. Van Heest, Esq.
Beers Anderson Jackson Patty & Van Heest, P.C.
P.O. Box 1988
Montgomery, Al. 36102-1988

OF COUNSEL