IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **THEODORE DAVIS,** | ) Case No.: 2:05-cv-632-WKW |
| **Plaintiff,** | ) **THE CITY OF MONTGOMERY'S AND** |
| vs. | ) **OFFICER SHELLEY WATTS'S REPLY** |
| ARMSTRONG RELOCATION, Lln, | ) **TO PLAINTIFF'S RESPONSE TO** |
| EDNA DUMAS, CITY OF | ) **MOTION FOR SUMMARY JUDGEMENT** |
| MONTGOMERY, et. al., | ) |
| **Defendants** | ) |

COMES NOW The City of Montgomery and Officer Shelley Watts, by and through undersigned counsel, and files this Reply to Plaintiff's Response to Defendant City of Montgomery's and Officer Shelly Watts' Motion for Summary Judgment:

1. On March 26, 2006, Defendants, City of Montgomery and Officer Shelly Watts, filed their Motion for Summary Judgment; and, Defendant hereby incorporates and references, as if fully set out herein, the arguments raised in said Motion for Summary Judgment. Specifically, Defendant Watts maintains that he is entitled to the "Qualified Immunity" as provided by Federal Law; and, furthermore, he is entitled to Discretionary Function Immunity as provided in §6-5-338(a) Code of Alabama (1975). Defendant City of Montgomery contends that it cannot be held liable under the theory of Respondeat Superior with regards to §1983 claims.

2. On April 24, 2006, the Plaintiff filed his Response to Defendants City of Montgomery's and Officer Shelly Watts' Motion for Summary Judgment. Counsel for the Plaintiff put all of his arguments under the general title of "Introduction". Defendant City of

1

Montgomery contends that there are several issues separate from each other and will attempt to quantify the arguments, and respond to such, as made by Plaintiff's Counsel with this reply.

## **BURDEN FOR OVERCOMING SUMMARY JUDGEMENT**

3.  Once the moving party has met its burden which the City of Montgomery and Officer Watts contends it has, Rule 56(e) "requires a non-moving party to go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, or admissions on file, designate specific facts showing there is a genuine issue for trial." Id. at 324. To avoid summary judgment, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). *Conclusory allegations cannot interpose genuine issues of material fact into the litigation so as to preclude entry of summary judgment. Rule 56(c) Fed.R.Civ.Pro.,* (Emphasis added)

4.  In the case of Macuba v. Deboer, 193 F.3d 1316 (11th Cir.1999), The United States Court of Appeals found that the "District court erred in considering hearsay testimony of former County Commissioner in ruling on motion for summary judgment in § 1983 action against current County Commissioners; statements that former County Commissioner claimed were made to him were being offered for truth of matter asserted and none of alleged statements made to him would have been admissible at trial under exception to hearsay rule." 42 U.S.C.A. § 1983; Fed.Rules Civ.Proc.Rule 56(e), 28 U.S.C.A. Defendant's would argue that in the present case, the Response filed by Counsel for the Plaintiff is riddled with conclusory allegations, matters that were not plead or in the alternative were plead improperly, invalid affidavits which

contain inadmissible hearsay not within any exception as well as not being in the proper form nor giving the necessary information about the affiant.

## QUALIFIED IMMUNITY/DISCRETIONARY FUNCTION IMMUNITY

5.  Counsel for the Plaintiff attempts to distort the facts when he discusses the Doctrine of Qualified Immunity but in doing so has strengthened the City of Montgomery's defense. In his response Plaintiff's Counsel cites several cases as illustrative to his point, expressly in Harlow v. Fitzgerald, 457 U.S. 800 (1982) qualified immunity "gives ample room for mistaken judgments' by protecting all but the plainly incompetent or those who knowingly violate the law". The City of Montgomery could not agree more. The Plaintiff has failed to assert that Officer Watts, Unknown Officer, or the City of Montgomery is any of the above. Further, the 11th Circuit has held that "To be shielded from suit by qualified immunity, a public official must first show that he was acting within the scope of his discretionary authority." Vinyard v. Wilson, 311 F.3d 1340, 1336 (11th Cir.2002). There is no dispute in this case that the Officer in question—Shelley Watts—was acting within the scope of his discretionary authority, which was the only authority on the scene. There were no policies or procedures in place to govern officers in such situations.

6.  Plaintiff's counsel continues by stating that the unknown officer evicted the Plaintiff. The established facts show that when the Officer arrived at the scene, Ms. Dumas produced a deed showing her ownership of the property, and the Plaintiff, Mr. Davis was unable to show any proof of ownership or any proof of his right to be on the property. All Officers employed by the City of Montgomery are sworn to uphold the laws of the State of Alabama as well as keep the peace. The Officer who arrived at the scene was there because of a call to the

police department requesting assistance. Once the Officer determined that this was a civil matter, the Officer, was faced with the fact that the Plaintiff had no proof of ownership, had no lease, no rental agreement, nothing to show that he was in fact not a trespasser onto this property. At that point, the Officer was faced with three choices: allow the situation to continue (which assuredly would have continued to disturb the peace and could have led to further escalation between the parties); remove the party that had an actual deed to the property in her name (which would have violated her Constitutional right to be on the property); or remove the party that had no proof of ownership (the Plaintiff) or rental agreement/lease showing he had a right to be on this property.

7. Secondarily, while the time allowed is disputed, the fact that the Plaintiff had the opportunity to enter the home and retrieve some articles further adds to the fact that the Officer made the right decision at that time. While the Plaintiff was in the home, he could have produced to the Officer the purported purchase agreement that showed his interest in the home. Plaintiff has argued that the Officers should have known based on statements given at the scene, that he had been living there for nearly ten years. Plaintiff avers that he had a right to be in the home because he thought he was buying it from Ms. Dumas. Pursuant to the Statute of Frauds the Officer acted appropriately. The Court held in Tractor Supply & Overseas Exchange Corp. v. Ellard Contracting Co., Inc. 119 F.Supp.814 (11th Cir. 1954) that "[the] purpose of statue of frauds is to prevent fraud and perjury with respect to agreements governed thereby requiring, for their enforcement, evidence of some note or memorandum in writing signed by parties to be charged or by his agent in his behalf". Mr. Davis alleged that he was the owner of the property and that he had made payments on the house in the past; however, he could produce no documentation showing any indicia of ownership or a right to possession.

**REPONDEAT SUPERIOR**

8.     Plaintiff, in his response to Defendant's Motion for Summary Judgment, begins the basis of his argument on page four (4) of the response.  Here, in the Plaintiff's own words, Officer Shelly Watts was not the Officer whom removed Plaintiff from the home that is the basis of this lawsuit. "The City makes one mistake in their argument. Mr. Watts was not the Officer to evict Mr. Davis, that was done by another officer whom the City cannot find a record of dispatching to the home." (*Pg 4 Plaintiff's response to Defendants Motion for Summary Judgment*)

9.     Further, Plaintiff's Counsel continues by stating that this Officer was an agent for the City of Montgomery and therefore, the City of Montgomery should be held liable for the actions of this Officer. Clearly throughout Plaintiff's entire document he is inferring that the City of Montgomery is liable under the Respondeat Superior theory.  In revisiting Monell v. Department of Social Services of New York City, 436 U.S. at 663, 98 S.Ct. at 2022, 56 L.Ed.2d 611 (1978).  "Rather, only deprivations undertaken pursuant to governmental 'custom' or 'policy' may lead to the imposition of governmental liability." Here the Plaintiff has failed to even approach that burden. The mere allegation of a custom or policy is not enough.  The Plaintiff must show that there is a policy or custom in effect, that this policy or custom violates the rights complained of and that the Officer was following that custom or policy. The Plaintiff fails miserably on all three counts.

10.    In addition, Monell further states, "A municipality cannot be held liable for violation of civil rights solely because employee is a tort-feasor; a municipality cannot be held liable under the Civil Rights Act of 1871 on a respondeat superior theory."

11. In Plaintiff's Response to Defendant City of Montgomery and Officer Watts Motion for Summary Judgment, he argued that there was an exception to that rule; that, under certain circumstances, a city may be held liable for the acts of its employees. This is a proper statement of the law, except that in order for the exception to apply, the employee must be highly enough placed such that he has "final policy making authority." Mathews v. Columbia City, 294 F.3d 1294, 1297 (11th Cir.2002). "A member or employee of a governing body is a final policy maker only if his decisions have legal effect without further action by the governing body. Id. None of the Officers named in this lawsuit who responded on the night in question have such authority. Therefore, their actions cannot be said to be the "policy or custom" of the City of Montgomery, and the City cannot be held vicariously liable therefore. Monell v. Department of Social Services of New York City, 436 U.S. 658, 694 (1978). Furthermore, there is no evidence to suggest that the City of Montgomery took any action or made any decision that, in any way, lead to or contributed to the incident. Hill v. DeKalb Regional Youth Detention Center, 40 F.3d 1176, 1195 (11th Cir.1994). In Brown, they said that,

> Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. Lewis v. Smith, 855 F.2d 736, 738 (11th Cir.1988) (per curiam); H.C. Hewett, 786 F.2d at 1086-87; Fundiller, 777 F.2d at 1443; Wilson v. Attaway, 757 F.2d 1227, 1241 (11th Cir. 1985). The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. *See* Clark v. Evans, 840 F.2d 876, 885 (11th Cir. 1988) (per curiam); Fundiller, 777 F.2d at 1443; Wilson, 757 F.2d at 1241. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

6

Brown v. Carwford, 906 F.2d 667, 670 (11th Cir.1990).

## DENIAL OF A CONSTITUTIONAL OR FEDERALLY GUARANTEED RIGHT

12.     The Officers are also entitled to a summary judgment on §1983 in their individual capacities because it is well established that a local government agency or its officials "may only be liable under §1983 if an action . . . *caused a constitutional tort*." Church v. City of Huntsville, 30 F. 3d 1332, 1342 (11th Cir. 1994) *emphasis added*.  Presumably, the Plaintiff is alleging that the "constitutional tort" in this case is the deprivation of his property rights in the house without due process of law.  Since he had no immediate right to possession of the house, he was not deprived of that right. At the time of this incident the Plaintiff had an opportunity to show the Officer that he had a right to possession of this property, which he failed to do.

## ABUSE OF PROCESS

13.     In response to Defendants City of Montgomery and Officer Shelly Watts Motion for Summary Judgment, Counsel for Plaintiff makes statements alleging certain policies are in effect that would establish the City of Montgomery had an ulterior purpose, that the City of Montgomery abused a process (Arrest Warrant) and the City of Montgomery had Malice. The allegations made stated that the warrant was flawed and should not have been issued.  They further alleged, if the City provided proper training or performed proper review of claims made, this warrant would not have been issued.  The claims that were made are conclusory statements to which Plaintiff's Counsel creates a policy that is not only not in effect but defamatory in nature.

14. The elements of the tort of abuse of process are 1) the existence of an ulterior purpose, 2) a wrongful use of process, and 3) malice. C.C. & J., Inc. v. Hagood, 711 So.2d 947, 950 (Ala.1998). The Plaintiff cannot prevail on this cause of action because they have shown no ulterior motive nor have they shown wrongful use of that process nor malice. The Alabama Supreme Court has likened abuse of process to the tort of malicious prosecution, and distinguished the two by saying, "[m]alicious prosecution concerns the wrongful issuance of process; abuse of process concerns the wrongful use of process after it has been issued. Willis v. Parker, 814 So.2d 857, 865 (Ala.2001) emphasis in original. It is the improper use of some properly issued piece of process that is the crux of the tort. "'[I]f process, either civil or criminal, is willfully made use of for a purpose not justified by law, this is abuse for which an [abuse of process] action will lie.'" Drill Parts and Service Co., Inc. v. Joy Mfg. Co., 619 So.2d 1280, 1287 (Ala.1993) insertions in original, citing Brown v. Master, 104 Ala. 451, 462-63, 16 So. 443, 446-47 (Ala.1894).

15. Furthermore, Defendants maintain that they are entitled to the various immunities from suit and liability as argued in the previously filed Motion for Summary Judgment. As such, there is no genuine issue of fact that is material to the case, and both defendants are entitled to judgments as a matter of law.

Respectfully submitted,

/s/Michael D. Boyle
Michael D. Boyle (ASB-1585-E68B)
Attorney for the City of Montgomery

OF COUNSEL:
City of Montgomery Attorney's Office
P.O. Box 1111
Montgomery, AL 36101-1111
Phone: (334) 241-2050
Fax: (334) 241-2310

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of May, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following parties or counsel:

Michael Rountree, Esq.
448 Saint Lukes Dr.
Montgomery, AL 36117

George L. Beck, Jr. Esq.
P.O. Box 2069
Montgomery, AL 36102-2069

Jeffrey W. Smith, Esq.
Slaten & O'Connor, P.C.
105 Tallapoosa Street, Suite 101
Montgomery, Alabama 36104

Winston Sheehan, Jr. Esq.
Ball, Ball, Mathews & Novak, P.A.
P.O. Box 2148
Montgomery, AL 36117

Judy B. Van Heest, Esq.
Beers Anderson, Jackson, Patty & Van Heest, P.C.
Post Office Box 1988
Montgomery, Alabama 36102-1988

Terrie Scott Biggs, Esq.
Capell Howard, PC
P. O. Box 2069
Montgomery, AL 36102-2069

Emily C. Marks, Esq,
Ball, Ball, Mathews & Novak, P.A.
P.O. Box 2148
Montgomery, AL 36117

And I hereby certify that I have also mailed by United States Postal Service the document to the above named non-CM/ECF participants.

/s/Michael D. Boyle
Of Counsel