IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

THEODORE DAVIS,                      )
                                     )
            Plaintiff,               )
                                     )
                                     )
v.                                   )
                                     )        CIVIL ACTION NO. 2:05CV632-WKW
ARMSTRONG RELOCATION, Lln,           )
*et al.*,                            )
                                     )
            Defendants.              )

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Currently pending before the undersigned Magistrate Judge is Defendant

Armstrong Relocation, Lln's Motion for Summary Judgment (Doc. #34) as well as

Defendant the City of Montgomery's and Officer Shelley Watts' joint Motion for

Summary Judgment (Doc. #37).  Upon consideration of the City of Montgomery's and

Officer Shelley Watts' joint Motion for Summary Judgment, the Magistrate Judge

RECOMMENDS that the motion is GRANTED.  Having recommended the dismissal of

all federal claims, the Magistrate Judge further RECOMMENDS that the Court

DECLINE to exercise supplemental jurisdiction over the state law claims and REMAND

the matter back to the local courts.  Accordingly, the undersigned RECOMMENDS that

Defendant Armstrong Relocation, Lln's Motion for Summary Judgment is DENIED as

MOOT.

## I.    BACKGROUND

Theodore Davis (Davis or Plaintiff) commenced this action on February 10, 2004, in the Circuit Court of Montgomery County.  Compl. (Doc. #1-2) at 1.  On July 6, 2005, the City of Montgomery, a named Defendant, removed the case to this Court.  Notice of Removal (Doc. #1-1) at 1.  On August 3, 2005, Plaintiff filed an Amended Complaint. Am. Compl. (Doc. #7).  Plaintiff, in addition to the City of Montgomery, named Montgomery Police Officer Shelley Watts (Watts) in his individual capacity, Armstrong Relocation Lln (Armstrong), a private moving company, and Edna Dumas (Dumas), a private citizen, as Defendants in this action.  Am. Compl. (Doc. #7) at ¶¶ 2-9.[1]  Plaintiff's

---

[1] Plaintiff's Complaint, as amended, also named "unknown officer(s) A, B, and C of the Montgomery Police Department" as well as "unknown Parties D, E, and F . . . believed to be the agents, employee[s] and/or family members" of Defendant Edna Dumas as Defendants in this matter.  Am. Compl. (Doc. #7) at ¶¶ 7, 9.  At the time Plaintiff filed his Complaint, he provided one explanation for not identifying one of the officers and that is the Montgomery Police Department did not have a record from the officer dispatched to 207 Rosedon Drive, Montgomery, Alabama, 36116, on the morning of January 18, 2004.  Plf.'s Resp. to Def.'s Mot. Summ. J. (Doc. #41) at unnumbered page 6.  On May 22, 2007, the undersigned ordered (Doc. #85) Plaintiff to show cause why the action should not be dismissed against these unidentified individuals for failure to properly serve them with process in accordance with Rule 4(m) of the Federal Rules of Civil Procedure.  Plaintiff did not respond to the Court's order.  The Court can only conclude that Plaintiff's silence reflects his lack of interest in prosecuting this action.  In general, "fictitious-party pleading is not permitted in federal court."  Edwards v. Ala. Dep't of Corr., 81 F. Supp. 2d 1242, 1257 (M. D. Ala. 2000).  See also Harris v. Palm Harbor Homes, Inc., 198 F. Supp. 2d 1303, 1304 (M. D. Ala. 2002); Wiggins v. Risk Enterprise Mgmt. Ltd., 14 F. Supp. 2d 1279 (M. D. Ala. 1998); Floyd v. Allstate Ins. Co., 989 F. Supp. 1435, 1436 (M. D. Ala. 1998).  Some courts, however, have found that, where the name of a specific person whom the plaintiff wishes to join as a defendant is unknown, the plaintiff may substitute an unnamed defendant until the plaintiff is able to discover the defendant's name.  See Scheetz v. Morning Call, Inc., 130 F.R.D. 34 (E. D. Pa. 1990) (finding that fictitious parties may be named as defendants in a complaint, based on plaintiff's inability to identify real parties, until the plaintiff has had reasonable opportunity to discover their identities through discovery).  In Dean v. Barber, 951 F.2d 1210 (11th Cir. 1992), the Eleventh Circuit held that a pro se plaintiff should

Complaint, as amended, alleges a number of federal and state claims against multiple

Defendants and one claim against the City of Montgomery individually.[2]  In particular,

Davis generally alleges that on the morning of January 18, 2004, "Defendants" unlawfully

detained or prevented him from the personal property contained within the residential

property located at 207 Rosedon Drive, Montgomery, Alabama, 36116 (the residential

property).  Am. Compl. (Doc. #7) at ¶ 31.[3]  Davis also generally alleges that Defendants

---

be allowed to add "Chief Deputy of the Jefferson County Jail John Doe" as a defendant, when the plaintiff indicated that he had not yet received a report from the jail which contained the name of the chief deputy.  Here, while it appears at one point in the litigation Plaintiff could not discover the identity of one of the officers, Plaintiff has not informed the Court whether his discovery attempts were successful.  As the deadline for discovery passed over a year ago, and Plaintiff has neither added the names of these individuals nor served them with process, the undersigned recommends that the Court dismiss all claims against these unidentified individuals.

Moreover, Plaintiff's Amended Complaint added Eddie Woods (Woods), a private citizen, as a Defendant.  The Federal Rules of Civil Procedure make Davis, as the plaintiff, responsible for serving Woods with both a summons and the complaint within 120 days after the filing of his Amended Complaint. Fed. R. Civ. P. 4(c); 4(m).  A review of the record in this matter reveals that Davis should have completed service of process on Woods by December 1, 2005.  To date, almost two years later, the record does not contain proof of such service.  Davis' failure to effectuate service of process further reflects his lack of interest in proceeding with the prosecution of this action.  In light of Davis' failure to properly serve Woods, the undersigned Magistrate Judge recommends that the Court dismiss without prejudice all claims against Woods. See Nelson v. Barden, 145 Fed. Appx. 303, 310 (11th Cir. 2005).

[2]The undersigned observes that Plaintiff voluntarily moved the Court to dismiss certain claims in October 2005 (Doc. #22).  The Court granted Plaintiff's motion (Doc. #23).  Thus, the recitation of the claims presented does not include those claims which have been dismissed previously.

[3]The Court notes that Plaintiff's Complaint, though amended, is not a model of clarity and contains a number of deficiencies in its structure, including failure to separately identify each count and failure to specify which Defendant against whom he asserts his claims.  For example, Count One of the Complaint lists three claims for relief:  "unlawful detainer (sic), improper eviction, and practicing law without a license."  Am. Compl. (Doc. #7) at unnumbered page 3.  It also, as mentioned directly above, generally charges "Defendants" with a claim of continuous unlawful detention.  Id. at ¶ 31.  In setting forth this count, however, Plaintiff limits his factual

Dumas and the City of Montgomery violated his constitutional rights to due process. Id. at ¶ 60.[4][5] He further alleges that Watts and the unidentified police officer who arrived at the residential property on the morning of January 18, 2004, unlawfully deprived and conspired to dispose and deprive Davis of his rights to due process and his right to

_____

discussion of the claim to the morning of January 18, 2004, and only identifies Defendants Dumas, Woods, and the City of Montgomery. See generally Am. Compl. (Doc. #7) at ¶¶ 12-35. Because Plaintiff does not include Armstrong or Watts in his entire discussion of the charge, the Court construes Plaintiff's omission as his intention not to assert a claim against Armstrong or Watts with this count. Moreover, Defendant Armstrong in its motion for summary judgment explicitly stated that Plaintiff has not filed any federal charges against it. Armstrong's Br. in Supp. Mot. Summ. J. (Doc. #35) at 6 n. 2. Plaintiff did not refute Armstrong's statement of the claims in his response brief. Thus, the undersigned finds that to the extent Plaintiff has set forth any federal claims against Armstrong and this particular claim against Watts, Plaintiff has abandoned them. Christophe v. Morris, 198 Fed. Appx. 818, 824 (11th Cir. 2006) (quoting Access Now, Inc. v. Southwest Airlines, Co., 385 F.3d 1324, 1330 (11th Cir. 2000) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.")).

[4]It is not at all clear to the Court the basis or bases upon which Plaintiff's claim for denial of due process lies, as Plaintiff generally lists this charge alongside four other claims. Am. Comp. (Doc. #7) at ¶ 60. Thus, the Court finds that Plaintiff only has alleged a general claim of procedural due process.

[5]The Court observes that Plaintiff also claims that these Defendants denied and invaded his personal rights. Am. Comp. (Doc. #7) at ¶ 60. Plaintiff does not specify which personal rights Defendants denied or invaded. While Plaintiff currently appears pro se before the Court, at the time Plaintiff filed his Amended Complaint and his Response to the pending motions for summary judgment, he was represented by counsel. Therefore, the Court is not willing to read claims into the Complaint that are not sufficiently pled. See Nelson, 145 Fed. Appx. at 311 n. 10 (indicating that only "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys, and will, therefore be liberally construed") (citing Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998)). Despite the Court's plain reading of the Complaint, the Court observes that it has expended an extraordinary amount of time working through the claims in this matter. Pleadings which are drafted and signed by a lawyer should not leave the Court and opposing parties guessing about their construction, especially as to a matter as basic as what a party's claims are.

peaceful enjoyment of his property under 42 U.S.C. §§ 1983, 1985, 1986 (2000).[6]  <u>Id.</u> at

¶¶ 93-94.[7]  Individually, Davis claims that the City of Montgomery's failure to properly

supervise its police officers denied him due process.  <u>Id.</u> at ¶ 134.[8]  The Complaint also

---

[6]In Davis' voluntary motion to dismiss certain claims (Doc. #22), he moves the Court to dismiss his § 1986 claim "only" against the City of Montgomery, but not against Watts and Officer A.  Plaintiff's Complaint, as amended, does not expressly include a § 1986 claim.  Am. Compl. (Doc. #7) at ¶¶ 92-97.  The Court, in granting Plaintiff's motion to dismiss, advised Defendants' opposing the dismissal to file objections.  Order (Doc. #23) of Nov. 7, 2005.  No Defendant filed an objection.  Because the issue was raised, albeit only directly against the City of Montgomery, in a pretrial order, and no Defendant opposed the indirect addition of the claim, the Court will address Plaintiff's argument below.  <u>Cooley v. Great S. Wood Pres.</u>, 138 Fed. Appx. 149, 153 (11th Cir. 2005) (citing <u>Steger v. Gen. Elec. Co.</u>, 318 F.3d 1066, 1077 (11th Cir. 2003)).

[7]The Court notes that Plaintiff repeatedly references Officer Watts or the Montgomery Police Department, a third-party to this suit, as "an agent" or "agents" for the City of Montgomery" in his recitation of the factual circumstances surrounding the events in question.  <u>E.g.</u>, Am. Comp. (Doc. #7) at ¶¶ 48, 57; <u>see also</u> <u>id.</u> at ¶ 28.  Because these references are embedded within the factual presentation upon which Plaintiff asserts his claims, the Court does not construe Plaintiff's characterization of Officer Watts' relationship with the City of Montgomery as setting an affirmative claim against the city.  Moreover, Plaintiff has not named the Montgomery Police Department as a party to this lawsuit, nor has Davis served the police department with process.  Indeed, prior to this action's removal to federal court, Davis amended his complaint to substitute the City of Montgomery for the Montgomery Police Department.  Compl. (Doc. #1-12) at 1.  Its relationship with the City of Montgomery is therefore not at issue.

[8]The Court notes that in the Amended Complaint, Davis does not set forth a claim against Watts for failure to prevent the theft of his property on January 19, 2004, although the Court observes that Davis sets forth the factual assertion.  <u>See</u> Am. Comp. (Doc. #7) at ¶¶ 92-97; <u>see also</u> <u>id.</u> at ¶ 51.  Instead, Davis appears to raise a challenge in his response brief.  Plf.'s Br. at unnumbered page 7.  The liberal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure do not afford Davis with an opportunity to raise this new claim of failure to prevent the theft of Plaintiff's property.  <u>Cooley v. Great S. Wood Pres.</u>, 138 Fed. Appx. at 153 ("This [liberal pleading] standard, however, does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.") (citation omitted).  "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."  <u>Id.</u> at *3.  Accordingly, Davis' claim against Watts for failure to prevent theft of his property is due to be dismissed.

alleges a number of state law torts against individual as well as multiple Defendants, including fraud, slander, conversion, false arrest and imprisonment, negligence, and abuse of process.  See generally Am. Compl. (Doc. #7) at unnumbered pages 3-11, 12-16, 19-24.

On March 24, 2006, Defendant Armstrong moved for summary judgment.  Doc. #34.  Three days later, Defendants City of Montgomery and Watts also jointly moved for summary judgment.  Doc. # 37.  Plaintiff's claims and Defendants' motions arise out of the following undisputed facts.

In 1994, Davis and Dumas rekindled a 20-year friendship, although Davis lived in Montgomery, Alabama, and Dumas lived in New Jersey.  Armstrong's Evid. Submission in Supp. Summ. J. (Doc. #36) at 30-31 (Davis' Depo.).  Because Davis had come off a strike, Dumas suggested that Davis could live in her home located at 207 Rosedon Drive, Montgomery, Alabama.  Id. at 31-32.  Over the next 10 years, Davis and Dumas would visit each other on occasion.  Id. at 57-58.  Dumas found out about some indiscretions and grew angry.  Id. at 113, 128-29.

At approximately 8:30 a.m. on January 18, 2004, Dumas, accompanied by Woods, arrived at the residence and demanded that Davis, vacate the premises.  Am. Compl. (Doc. #7) at ¶¶ 24, 26, 114.  Plaintiff called the Montgomery Police Department seeking assistance regarding a dispute.  Am. Compl. (Doc. #7) at ¶¶ 25, 114; City of Montgomery's and Watts' Br. in Supp. Mot. Summ. J. (Doc. #38-1) at 1 (City's Brief).

An unidentified Montgomery Police Officer (Officer A) was dispatched in response to his call. Am. Compl. (Doc. #7) at ¶ 26; City's Brief at 1. Upon arrival, Officer A encountered Davis and Dumas and asked questions about the dispute. See Am. Compl. (Doc. #7) at ¶¶ 27, 116; see City's Brief at 2. Davis told Officer A that he rented and/or made payments to Dumas to purchase the property from her. Am. Compl. (Doc. #7) at ¶ 14; City's Brief at 2. But Davis could not produce any documentation showing ownership in the property. Am. Compl. (Doc. #7) at ¶¶ 15, 30; City's Brief at 2. Dumas told Officer A that Davis never made any payments to her and produced a copy of a deed for the property. Am. Compl. (Doc. #7) at ¶ 28; see City's Brief at 2. Dumas indicated that she wanted Davis off her property, although no written default notice had been served on Plaintiff. Am. Compl. (Doc. #7) at ¶¶ 21, 24; City's Brief at 2. Officer A informed Davis that he had no rights to the home or belongings and needed to vacate the premises, but Davis could go inside the home to retrieve his belongings. Am. Compl. (Doc. #7) at ¶¶ 28, 119; City's Brief at 2. Officer A also told Davis that he had to leave the property or Plaintiff would be taken to jail. Am. Compl. (Doc. #7) at ¶ 28. Plaintiff gathered some belongings. Am. Compl. (Doc. #7) at ¶ 29. Once outside, Davis presented Officer A with utilities bills for the property in his name only; Officer A again informed Plaintiff that he had to leave, and Plaintiff departed. Id.

Later that afternoon, Davis called the Montgomery Police Department requesting that an officer accompany him at the property to retrieve some personal belongings

7

including medications, money, clothing, and papers. Am. Compl. (Doc. #7) at ¶ 37; City's Brief at 2. Watts was dispatched. Am. Compl. (Doc. #7) at ¶ 38; City's Brief at 2. Watts knocked on the front door. Am. Compl. (Doc. #7) at ¶ 38. When no one answered, Davis and Watts walked to the back door, and, finding it open, entered the house, calling for Dumas. Am. Compl. (Doc. #7) at ¶¶ 38, 39. Dumas and Woods approached. Am. Compl. (Doc. #7) at ¶ 40. Dumas and Woods began yelling at the two men, causing Watts to instruct Plaintiff to step outside. Am. Compl. (Doc. #7) at ¶¶ 40, 41. Watts remained inside and talked with Dumas. Am. Compl. (Doc. #7) at ¶ 41; City's Brief at 2. When Watts returned outside, he told Davis he had to leave without his personal belongings. Am. Compl. (Doc. #7) at ¶ 42. Dumas, however, gathered some of Davis' medications and gave them to Davis. Am. Compl. (Doc. #7) at ¶ 42; City's Brief at 2. Davis asked if he could set up a time to retrieve his belongings, and Watts talked to Dumas for him. Am. Compl. (Doc. #7) at ¶ 43. Dumas agreed to allow Davis to return to the property two days later to retrieve his belongings, but she indicated that he must remove all of his belongings by the following Thursday. Am. Compl. (Doc. #7) at ¶ 43; City's Brief at 2. Plaintiff again left the property. Am. Compl. (Doc. #7) at ¶ 44.

The following day--January 19, 2004,--Dumas hired Armstrong to remove the personal property from the residence and to place it on the front yard. Plf.'s Evid. Submission in Resp. to Def. City of Montgomery's and Watts' Mot. for Summ. J. (Doc.

#42-8) at 42.[9]  She announced from the yard that anyone could take the items for free.
Am. Compl. (Doc. #7) at ¶ 45.  Watts again responded to call from a bystander for
assistance at the residential property and after speaking to the bystander, talked with
Dumas.  Plf.'s Evid. Submission in Opp'n Summ. J. (Doc. #42-5) at 3 (Bryant Depo.).
The two talked for approximately 30 to 45 minutes and then walked inside the residence.
Id. at 4.  When they returned outside, while talking and laughing with Dumas, Watts
carried a bag containing an unidentified item that he placed in trunk of the patrol car.  Id.
Watts then departed.  Id.

In or around that same day, Plaintiff went to the Montgomery Police Department to
file a report for the loss of his personal belongings.  Am. Compl. (Doc. #7) at ¶ 56.  While
there, Plaintiff was arrested pursuant to an arrest warrant and charged with trespassing.
Am. Compl. (Doc. #7) at ¶ 56.  The charge was later dismissed.  Am. Compl. (Doc. #7) at
¶ 59.

## II.    STANDARD OF REVIEW

In considering Defendants' motions for summary judgment, Rule 56(c) of the
Federal Rules of Civil Procedure provides that summary judgment is appropriate where
"there is no genuine issue as to any material fact and . . . the moving party is entitled to
judgment as a matter of law."  This standard can be met by the moving party, in cases

---

[9]The Court notes that Dumas testified in her deposition that not all of the furniture in the
house belonged to Davis.  Plf.'s Evid. Submission in Resp. to Def. City of Montgomery's and
Watts' Mot. for Summ. J. (Doc. #42-8) at 41.  Plaintiff has not provided the Court with any
evidence contradicting this statement.

where the moving party bears the burden of proof at trial, by submitting affirmative evidence establishing every element of the moving party's claim. All the evidence, and the inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

With respect to issues (such as affirmative defenses when the plaintiff is the moving party) for which the nonmoving party bears the burden of proof at trial, the moving party may present evidence negating an essential element of the nonmoving party's claim or by demonstrating that the nonmoving party's evidence itself is insufficient to establish an essential element of his claim. An issue of fact is "material" if under the applicable substantive law, it might affect the outcome of the case. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (internal citations omitted). In either case, the burden then shifts to the nonmoving party to present evidence showing that there is a genuine issue of material fact. See Castleberry v. Goldome Credit Corp., 408 F.3d 773, 785-86 (11th Cir. 2005). To satisfy this burden, the nonmoving party cannot rest on the pleadings, but must, by affidavit or other means, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The moving party bears "the exacting burden of demonstrating that there is no dispute as to any material fact in the case," Warrior Tombigbee Transport Co. v. M/V Nan Fung, 695 F.2d 1294, 1296 (11th Cir. 1983), and that it is entitled to judgment as a matter of

law.  See Keel v. United States Dep't of Air Force, 256 F. Supp. 2d 1269, 1291 (M. D. Ala. 2003).

## III.  DISCUSSION

### A.    Claims against the City of Montgomery

Davis alleges that the City of Montgomery is liable for the violations of his constitutional rights which occurred when Officer A detained or prevented him from his personal property located within the residential property, when the City of Montgomery violated his rights to due process and when the City of Montgomery failed to supervise its officers, thereby violating his due process rights.[10]  The Supreme Court has placed strict limitations on municipal liability under section 1983.  Municipalities may not be held liable for constitutional deprivations on the theory of *respondeat superior*.  Griffin v. City of Opa-Locka, 261 F.3d 1295, 1307 (11th Cir. 2001).  It is well-settled that to sue a municipality under § 1983, "the plaintiff has the burden to show that a deprivation of

---

[10]The Court notes that in the Amended Complaint, Davis does not allege that the deprivation of his constitutional rights was the result of a municipal custom or policy.  Instead, the Amended Complaint appears to allege a Section 1983 claim against the City of Montgomery based upon *respondeat superior.*  The liberal pleading requirements under Rule 8 of the Federal Rules of Civil Procedure do not afford Davis with an opportunity to raise this new claim of municipal custom or policy at this stage of the case.  Cooley v. Great S. Wood Pres., 2005 WL 1163608, at *2 (11th Cir. May 18, 2005) ("This [liberal pleading] standard, however, does not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage.") (citation omitted).  "A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment."  Id. at *3.  Accordingly, Davis' municipal custom or policy claim under § 1983 against the City of Montgomery is due to be dismissed on this basis. Notwithstanding, as the parties have argued and presented evidence on this issue of custom or policy, the Court will address their argument.

constitutional rights occurred as a result of an official government policy or custom."

Cooper v. Dillon, 403 F.3d 1208, 1221 (11th Cir. 2005); see also Monell v. Dep't of

Social Servs., 436 U.S. 658, 690-91 (1978) (holding that a § 1983 action against a

governmental body may be brought where the alleged unconstitutional action

"implements or executes a policy statement, ordinance, regulation, or decision officially

adopted and promulgated by that body's officers" or those "visited pursuant to

governmental custom").[11]

    A local government body is liable under § 1983 "when execution of a

government's policy or custom, whether made by its lawmakers or by those whose edicts

or acts may fairly be said to represent official policy, inflicts the injury." Monell, 436

U.S. at 694.  "A policy is a decision that is officially adopted by the municipality, or

created by an official of such rank that he or she could be said to be acting on behalf of

the municipality.  A custom is a practice that is so settled and permanent that it takes on

the force of law." Cooper, 403 F.3d at 1221 (quotation and citations omitted).  "There are

three ways to show a governmental policy or custom:  (1) an express policy; (2) a

widespread practice that is so permanent and well-settled as to constitute a custom; or (3)

the act or decision of a municipal official with final policy-making authority." Hyath v.

_____

[11]A "threshold identification of a custom or policy" should initially be made to ensure that
a municipality is "held liable only for those deprivations resulting from the decisions of its duly
constituted legislative body or those officials whose acts may fairly be said to be those of the
municipality." McDowell v. Brown, 392 F.3d 1283, 1290 (11th Cir. 2004).

City of Decatur, 2006 U.S. Dist. LEXIS 21184, at *29-30 (N. D. Ga. Mar. 28, 2006).

"[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986); see also Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) ("Only those municipal officers who have final policymaking authority may by their actions subject the government to § 1983 liability."). "State and local positive law determine whether a particular official has final policymaker authority for § 1983 purposes." Cooper, 403 F.3d at 1221.

The discussion of these principles in Church v. City of Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994), is helpful. In Church, the Eleventh Circuit explained: "[M]unicipal liability may be based upon (1) an action taken or policy made by an official responsible for making final policy in that area of the city's business; or (2) a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." Church, 30 F.3d at 1343. To establish the existence of a practice or custom under the second prong, "it is generally necessary to show a persistent and wide-spread practice." Id. at 1345. Section 1983 only "imposes liability on a government that, under color of some official policy, 'causes' an employee to violate another's constitutional rights." Monell, 436 U.S. at 692. Put differently, the governmental policy

13

or custom must be the moving force behind the constitutional deprivation.  Farred v.

Hicks, 915 F.2d 1530, 1532-33 (11th Cir. 1990).

    In an effort to substantiate his claims against the City of Montgomery, Davis

appears to allege in his opposition brief two "polic[ies] and/or [customs]."  He first

alleges that the City of Montgomery has a policy of incorrectly and improperly

maintaining dispatch records.  Plf.'s Resp. to Defs.'s Mot. Summ. J. (Doc. #41) at

unnumbered page 6.  Plaintiff points to the City of Montgomery's inability to identify the

identity of the officer who responded to his call for assistance on January 18, 2004, in

support of this policy.  Plaintiff has not identified any municipal officer with final policy-

making authority who has deliberately determined to maintain incorrect and improper

dispatch records, a requisite fact Davis must prove to demonstrate a policy exists.

Pembaur, 475 U.S. at 483; Cooper v. Dillon, 403 F.3d at 1221.  Moreover, the language

of § 1983 plainly requires an affirmative causal connection between the actions taken by

the defendant and the constitutional deprivation.  Swint v. City of Wadley, Ala., 51 F.3d

988, 999 (11th Cir. 1995).  Davis also fails to provide any evidence indicating a causal

connection between the police department, as a whole, or any high-ranking official in the

city's government and the acts of the unidentified police officers who failed to keep

adequate records.  Because Davis's allegations concern the acts of the unidentified

individual police officers, it is inconceivable that the City of Montgomery could be liable

to Davis on these particular facts.  Cf. City of Los Angeles v. Heller, 475 U.S. 796, 799

(1986).  Without more, Plaintiff has merely presented unsubstantiated assertions, which, alone do not suffice to establish municipal liability under Section 1983 and, consequently, are not enough to withstand a motion for summary judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Babers v. City of Tallassee, 152 F. Supp. 2d 1298 (M. D. Ala. 2001).

Second, Davis appears to allege that Officer A's order that Plaintiff leave the residential property demonstrates the City of Montgomery has a policy or custom of not providing proper training to its officers responding to private property disputes.  Plf.'s Resp. to Defs.'s Mot. Summ. J. (Doc. #41) at unnumbered page 4.

In the context of allegations of inadequate training and supervision, "a plaintiff may prove a city policy by showing that the municipality's failure to train evidenced a 'deliberate indifference' to the rights of its inhabitants."  Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (internal citation omitted).  "A constitutional deprivation can occur 'where the failure to train [or supervise] amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1318 (M. D. Ala. 2002) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Deliberate indifference requires a plaintiff to "present some evidence that the municipality knew of a need to train and/or supervise *in a particular area* and the municipality made a deliberate choice not to take any action."  Id. at 1350-1351 (internal citations omitted) (emphasis added).  "[W]ithout notice of a need to train

15

or supervise <u>in a particular area</u>, [however,] a municipality is not liable as a matter of law for any failure to train or supervise." <u>Id.</u> at 1351 (emphasis added).  Hence, to the extent that the City of Montogomery was aware of other incidents of similar conduct, this knowledge supports a theory that there was a failure to supervise or train.  <u>See Romero</u>, 220 F. Supp. 2d at 1318 (citing <u>Gold</u>, 151 F.3d at 1350-51) (deliberate indifference established by knowledge of similar prior incidents).  In any event, the City of Montgomery is not automatically liable under section 1983 even if it inadequately trained or supervised its police officers and those officers violated Davis' constitutional rights.

The United States Supreme Court has explained that there are only "limited circumstances" in which an allegation of a failure to train or supervise can be the basis for liability under § 1983.  <u>See</u> <u>City of Canton</u>, 489 U.S. at 387.  These "limited circumstances" occur only where the municipality inadequately trains or supervises its employees, this failure to train or supervise is a city policy, and that city policy <u>causes</u> the employees to violate a citizen's constitutional rights.  <u>Id.</u> at 389-91 (emphasis added).

The only support Plaintiff proffers for this policy and/or custom is his personal encounter with an unidentified police officer on the morning of January 18, 2007.  This one encounter with Officer A fails to demonstrate that the Montgomery Police Department or any high-ranking official in that department or the city's government deliberately chose not to provide proper training to its officers who respond to dispatches concerning private disputes.  Plaintiff has not shown that any municipal officer with final

16

policymaking authority has taken an action or made a policy concerning the training of officers who face private disputes.  In other words, Plaintiff has not shown a failure to train policy exists.

Moreover, Davis' evidence, which relates solely to this incident, fails to establish a persistent failure to train police officers on the part of the City of Montgomery.  See Church v. City of Huntsville, 30 F.3d 1332, 1345 (11th Cir. 1994) ("Normally random acts or isolated incidents are insufficient to establish a custom or policy.") (citing Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986)).  In Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986), the Eleventh Circuit held that to establish a practice or custom it is generally necessary to show a persistent and widespread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality.  Id.  In Depew, a police brutality case, the Eleventh Circuit upheld a jury verdict for the plaintiffs on the basis of approximately five prior incidents of excessive force.  The Court held that "while the mayor and [city] council members were aware of prior complaints of excessive force, they continued to assert that the department's supervision was satisfactory and that the officers were doing a good job." Id. at 1498.  Because "the city had knowledge of improper police conduct, but failed to take proper remedial action," id. at 1499, the Court found that the jury could legitimately infer that the city "had implicitly ratified a custom or policy permitting the police to use excessive force against its citizens."  Id. at 1501.  In Brooks v. Scheib, 813

F.2d 1191, 1193 (11th Cir. 1987), another police brutality case, the Circuit explained that:

> A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a "custom or policy" if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct.

Id.  The Court reversed the district court's judgment for the plaintiff, holding that "[q]uite simply, there [was] no evidence that city officials were aware of past police misconduct." Id.

Here, Davis has presented no evidence of prior similar incidents involving the Montgomery Police Department.  He has also presented no evidence that any final policymaker was ever aware of any incidents similar to the one which occurred on the morning of January 18, 2004.  Consequently, Davis has failed to produce any evidence sufficient to prove a persistent failure on the part of the City of Montgomery to train its officers for in handling private property disputes.

Similar to Davis' first policy/custom argument, Davis also fails to provide any evidence indicating a causal connection between the police department, as a whole, or any high-ranking official in the city's government and the acts of the unidentified police officers.  Swint v. City of Wadley, Ala., 51 F.3d 988, 999 (11th Cir. 1995).  Because Davis's allegations concern the acts of one unidentified individual police officer, Officer A, it is inconceivable that the City of Montgomery could be liable to Davis on these particular facts.  Cf. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).  Based on the foregoing, the Court finds that summary judgment for the City of Montgomery is

proper.

**B.     Claims Against Watts**

Davis sets forth two claims against Watts in his individual capacity.  First, he claims that Watts and Officer A conspired to dispose and deprive Davis of his rights to due process and his right to peaceful enjoyment of his property under 42 U.S.C. §§ 1985, 1986.  Second, he alleges that Watts and Officer A unlawfully deprived him of his rights to due process and his right to peaceful enjoyment of his property under 42 U.S.C. § 1983.  Watts asserts the defense of qualified immunity.  The Court will address Davis' conspiracy claim first, followed by Watts' assertion of qualified immunity.

**1.     Conspiracy Claim**

Davis has asserted his conspiracy claim under three provisions of federal law:  42 U.S.C. §§ 1983, 1985, 1986.  The Court will address each provision in turn.

The substantive law under § 1983 is well settled.  "Conspiring to violate another person's constitutional rights violates section 1983."  Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283-84 (11th Cir. 2002).  "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff must show that the parties reached an understanding to deny the plaintiff his or her rights and prove an actionable wrong to support the conspiracy."  Bailey v. Bd. of County Comm. of Alachua County, Fla., 956 F.2d 1112, 1122 (11th Cir. 1992), cert. denied, 506 U.S. 832 (1992) (quoting Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990), cert. denied, 500 U.S. 932 (1991)).  Plaintiff need not produce a "smoking

gun" to establish the "understanding" or "willful participation" required to show a conspiracy, but must show some evidence of agreement between the defendants. Rowe, 279 F.3d at 1283-1284. See also Arline v. City of Jacksonville, 359 F. Supp. 2d 1300, 1312 (M. D. Fla. 2005). Circumstantial evidence may be sufficient to establish a conspiracy if it proves the existence of the conspiracy. Burrell v. Bd. of Trustees of Ga. Military College, 970 F.2d 785, 789 (11th Cir. 1992), cert. denied, 507 U.S. 1018 (1993).

Plaintiff has failed to prove the existence of an agreement between Watts and Officer A. The summary judgment record is void of any evidence indicating that Watts and Officer A agreed to deprive and dispose of Davis' property on January 18, 2004.[12] Indeed, Plaintiff has produced no evidence suggesting that Watts and Officer A ever interacted or spoke with one another concerning the events each officer individually encountered at the residential property on the day in question. Plaintiff has failed to show an agreement between these two men to deny him of his civil rights. As Plaintiff has failed to meet his burden of proof, summary judgment is appropriate.

To state a § 1985 conspiracy claim, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly and indirectly, any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) that a person is either injured in his

---

[12]The Court specially notes that Plaintiff did not contest the Watts' actions which took place on January 19, 2004, in setting forth his claim of conspiracy. His claim is explicitly limited to the events that occurred on January 18, 2004. Am. Comp. (Doc. #7) at ¶¶ 93, 95.

person or property or deprived of any right or privilege of a citizen of the United States.

Denney v. City of Albany, 247 F.3d 1172, 1190 (11th Cir. 2001); Newsome v. Lee

County, Al., 431 F. Supp. 2d 1189, 1201 (M.D. Ala. 2006) (citations omitted).

Thus, the first element that Plaintiff must show in a conspiracy claim is an

agreement between the members of the alleged conspiracy.  See, e.g., Godby v.

Montgomery County Bd. of Educ., 996 F. Supp. 1390, 1412 (M.D. Ala. 1998).  Although

the existence of a conspiracy may be supported by circumstantial evidence, there must be

some indication that the individuals were acting, in some sense, in concert. See, e.g.,

Burrell v. Bd. of Tr. of Ga. Military Coll., 970 F.2d 785, 789 (11th Cir. 1992), cert.

denied, 507 U.S. 1018 (1993).  Where there is no indication of an agreement to act

against the constitutional rights of an individual, there is no cause of action under § 1985.

Godby v. Montgomery County Bd. of Educ., 996 F. Supp. at 1412; (citing Briscoe v.

LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983)).

Davis' allegations regarding the existence of a conspiracy and Defendants' roles in

the alleged conspiracy are vague, conclusory, and lacking in full support.  Fullman v.

Graddick, 739 F.2d 553, 557 (11th Cir. 1984) (holding that in civil rights conspiracy

actions, conclusory, vague and general allegations of conspiracy are insufficient to

support a claim of conspiracy); see also Ana Leon T. v Federal Reserve Bank of Chicago,

823 F.2d 928, 930 (6th Cir. 1987) ("The allegations must be more than mere conclusions,

or they will not be sufficient to state a civil rights claim.") cert. denied, 484 U.S. 945

21

(1987); <u>Chapman v. City of Detroit</u>, 808 F.2d 459, 465 (6th Cir. 1986) ("It is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."). In particular and, as discussed above, Plaintiff merely has shown that Watts and Officer A separately responded to dispatch calls on January 18, 2004, involving Davis and the residential property. Nothing in these facts, either circumstantially or directly, demonstrates that there was a meeting of the minds linking the two officers' actions to deny Davis of his civil rights. <u>See</u> <u>San Filippo v. U.S. Trust Co.</u>, 737 F.2d 246, 256 (2d Cir. 1984) (affirming district court's holding granting summary judgment when the only evidence of a conspiracy was that the defendants met on several occasions and there was nothing suspicious about the meetings); <u>Ostensen v. Suffolk County</u>, 378 F. Supp. 2d 140, 146 (E. D. N. Y. 2005) (finding no evidence of a conspiracy where the plaintiff only had shown that the officer had responded to a previous call at the residence in question and to a subsequent call for a reported burglary). Thus, Plaintiff has failed to show an agreement between Watts and Officer A. Summary judgment is therefore appropriate.

Plaintiff's § 1985 claim fails for another reason. "The key factor in this [test] is the second element, which specifically requires the plaintiff to show some 'class-based, invidiously discriminatory animus behind the conspirators' action.'" <u>Newsome v. Lee County, Ala.</u>, 431 F. Supp. 2d at 1201-02 (citing <u>Griffin v. Breckenridge</u>, 403 U.S. 88,

102 (1971)).  "This narrow intent requirement erects a significant hurdle for section

1985(3) plaintiffs."  <u>Burrell v. Bd. of Trs. of Ga. Military Coll.</u>, 970 F.2d at 794.  Plaintiff

fails to establish, much less allege, that Watts' and Officer A's actions were motivated by

some class-based invidiously discriminatory animus, a requisite factor in the second

element.  <u>See</u> <u>Lucero v. Operation Rescue of Birmingham</u>, 954 F.2d 624, 628 (11th Cir.

1992) (finding that defendants' animus was targeted neither at "women as a group" nor

"pregnant women," but at that "class of women seeking to exercise their . . . right to

obtain an abortion and those persons who would aid them in doing so").  Moreover,

Plaintiff's bald assertion does not specifically provide how Defendants' acted with an

unusual prejudice or malevolent ill will.  Because Plaintiff cannot establish the first and

second elements of a § 1985 conspiracy, summary judgment is appropriate.

　　　　To the extent that Davis also asserts a claim under 42 U.S.C. § 1986, summary

judgment is also appropriate.  Section 1986 provides that:

> Every person who, having knowledge that any of the wrongs conspired to
> be done, and mentioned in [42 U.S.C. § 1985], are about to committed, and
> having power to prevent or aid in preventing the commission of the same,
> neglects or refuses so to do, if such wrongful act be committed, shall be
> liable to the party injured, or his legal representatives, for all damages
> caused by such wrongful act, which such person by reasonable diligence
> could have prevented.

42 U.S.C. § 1986.  Section 1986 is, in effect, a "derivative of § 1985," and a violation of

§ 1986 cannot be established "without establishing a violation of § 1985."  <u>Park v. City of</u>

<u>Atlanta</u>, 120 F.3d 1157, 1160 (11th Cir. 1997).  Because Davis has failed to establish a

violation of § 1985, his § 1986 claim also must fail.  Park v. City of Atlanta, 120 F.3d at 1160.  Summary judgment also is appropriate for Davis' § 1986 claim.

### 2.     Qualified Immunity

Davis also alleges that on January 18, 2004, Watts unlawfully deprived him of his rights to due process and his right to peaceful enjoyment of his property under 42 U.S.C. § 1983.  Watts asserts the defense of qualified immunity.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  "The purpose of this immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law."  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citations omitted). See also Wood v. Kesler, 323 F.3d 872 (11th Cir. 2003).

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful actions occurred."  Id. (internal quotation marks omitted).  In the instant case, the parties have not contested that Watts was acting in his discretionary capacity when he responded to

24

Plaintiff's call for assistance on the afternoon of January 18, 2004.[13]  "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate."  Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1267 (11th Cir. 2004) (stating that plaintiff must demonstrate that a reasonable jury could interpret the evidence in the record as showing that defendant violated a constitutional right that was clearly established at the time of the acts in question).

The United States Supreme Court has set forth a two-part test to determine whether a public official is entitled to qualified immunity.  The court must ask first the following threshold inquiry:  "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Brosseau v. Haugen, 543 U.S. 194, 196-97 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Saucier, 533 U.S. at 201.  "If a constitutional right would have been violated under the plaintiff's version of the facts, [however] 'the next, sequential step is to ask whether the right was clearly established.'"  Vinyard, 311 F.3d at 1346 (quoting Saucier, 533 U.S. at 201).  This two-step inquiry is designed to "provide[ ] ample protection to all but the

---

[13]The Court observes that Plaintiff contests the discretionary authority of Officer A's actions on the morning of January 18, 2004.  Plf.'s Resp. to Defs.' Mot. Summ. J. (Doc. #41) at unnumbered page 4.

plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). Employing the above analytical framework, the Court will determine whether Watts is entitled to summary judgment on the basis of qualified immunity.

Plaintiff asserts that on January 18, 2004, Watts unlawfully deprived him of his rights to due process and his right to peaceful enjoyment of his property under 42 U.S.C. § 1983. Plaintiff has failed to set forth any facts in support of this assertion in his Complaint. Am. Compl. (Doc. #7) at ¶¶ 92-97.[14] Where, as here, qualified immunity is implicated, "'some factual detail is necessary [in the complaint], especially if the court is to be able to see that the allegedly violated right was clearly established when the allegedly wrongful acts occurred.'" Hooper v. City of Montgomery, 482 F. Supp. 2d 1330, 1330-31 (M. D. Ala. 2007) (internal bracketing removed) (noting that in civil rights actions against public officials who may be entitled to qualified immunity in the Eleventh Circuit, complaints must be pleaded with heightened specificity) (quoting 963 F.2d 1481, 1485 (11th Cir. 1992)). As Plaintiff has not set forth a factual basis for his claim in his Amended Complaint, the undersigned finds that Davis has failed to meet the heightened pleading requirement. Consequently, the Court need not reach the issue of qualified immunity. And, the undersigned concludes Watts is entitled to summary judgment.

---

[14]The Court observes the only facts alleged in the Complaint, as amended, concern , referenced as "the Officer," who arrived at the residential property on the morning of January 18, 2004. Am. Compl. (Doc. #7) at ¶ 95. At no point in the recitation of the claim does Plaintiff set forth any facts against Watts.

C.    **Claims Against Dumas**

For reasons that are not obvious, counsel for Defendant Dumas decided against filing a dispositive motion.  Under the circumstances, the Court perceives two options for handling the federal causes of action as to Dumas.  First, the Court could reflexively declare that those federal claims will proceed to trial because she neglected to move for summary judgment in accordance with the applicable Rule 16(b) Scheduling Order.  While perhaps having the virtue of expedience in the short term, this myopic approach would reap an inefficient, improvident outcome by burdening the litigants, the Court, the jury, and the judicial system with a trial on federal claims for which Plaintiff has been unable to marshal sufficient evidence in response to dispositive motions filed by other Defendants.  Davis' summary judgment response demonstrates that he cannot establish his due process and unlawful detention claims.  If he cannot do so now, after having the benefit of the discovery process and in the face of direct challenges from other Defendants, then there is no reasonable probability that he will be able to do so at trial.  To ignore that inevitability and to set a trial on those federal claims because Dumas failed to file a Rule 56 motion would be to condemn all involved to a futile endeavor trying federal claims that have been dismissed as wanting with respect to identically situated Defendants.

Second, the Court could unilaterally grant summary judgment to Dumas, notwithstanding her failure to move for such relief.  In general, as stated above, federal courts are loath to make a party's arguments for it or to dismiss claims of their own

27

accord without affording plaintiffs an adequate advance opportunity to be heard.

Nonetheless, a district court may award summary judgment *sua sponte* so long as the

party adversely affected has received adequate notice to submit evidence and arguments

on the issue in question.  See Flood v. Young Woman's Christian Ass'n of Brunswick,

Georgia, Inc., 398 F.3d 1261, 1267 (11th Cir. 2005) ("[D]istrict court may enter summary

judgment *sua sponte* if the parties are given adequate notice that they must present all of

their evidence"); Artistic Entm't, Inc. v. City of Warner Robins, 331 F.3d 1196, 1201 n.

10 (11th Cir. 2003) ("Where it appears clearly upon the record that all of the evidentiary

materials that a party might submit in response to a motion for summary judgment are

before the court, a *sua sponte* grant of summary judgment against that party may be

appropriate if those materials show no material dispute of fact exists."); Burton v. City of

Belle Glade, 178 F.3d 1175, 1204 (11th Cir. 1999) (similar).  Thus, entry of summary

judgment on the Court's own motion is appropriate if, as here:  (1) the legal issue has

been fully developed, and (2) the evidentiary record is complete.  See Artistic, 331 F.3d at

1202.  The Court finds that the legal issue of the viability of Davis' claims against Dumas

have been fully developed, that the evidentiary record is complete, and that Davis has had

a full opportunity to present all of their evidence and legal arguments in support of his

alleged violations of unlawful detention and of due process.  Accordingly, this is one of

the rare cases where *sua sponte* summary judgment is authorized and appropriate.

     Davis also alleges that Dumas, along with Woods, unlawfully detained or

prevented him from his personal property on January 18, 2004. He further generally claims that Dumas violated his due process rights. Summary judgment is also proper for these claims.

Constitutional violations do not apply to private citizens unless they act under color of state law. Smartt v. First Union Nat'l Bank, 245 F. Supp. 2d 1229, 1233 (M. D. Fla. 2003). The "under-color-of-state-law" element of § 1983 generally excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (internal citations omitted). Nonetheless, "[o]nly in rare circumstances will a private party be viewed as a state actor for § 1983 purposes." Schultz, 174 Fed. Appx. at 538. To act under color of state law within the meaning of § 1983, the private party must act either jointly or with or through a state actor. Id. (citing Tower v. Glover, 467 U.S. 914, 920 (1984); Harvey v. Harvey, 949 F.2d 1127, 1130 (11th Cir. 1992)). In other words, private actors can be held liable under § 1983 if they act in concert with the state officials in depriving a plaintiff of his constitutional rights. Bendiburg v. Dempsey, 909 F.2d 463, 468 (11th Cir. 1990), cert. denied, 500 U.S. 932 (1991) (citing Lugar v. Edmondson Oil Co., 457 U.S. 922 (1987); Dennis v. Sparks, 449 U.S. 24 (1980)).

With respect to Davis' unlawful detention claim, Davis claims that Dumas, along with Woods, prevented him from returning to the residential property and getting his belongings on January 18, 2004. The record indicates that the residential property

29

belonged to Dumas,[15] and after learning about some indiscretions on Davis' part, she came to retrieve it back from Davis on the morning of January 18, 2004, and provoked a dispute with Davis.  In response, Davis called the police for assistance.  Officer A arrived and listened to both Dumas and Davis' stories and instructed Davis to leave once Dumas produced the deed to the house.  Nothing in these facts demonstrates that Dumas' actions occurred jointly, with, or through a state actor.  Rather, her actions were taken solely on her own initiative out of anger.  When Officer A arrived, both Davis and Dumas interacted with him to resolve the dispute.  As there is no evidence or allegation that Dumas and Officer A met before his arrival and planned to order his removal from the property, Plaintiff's claim for unlawful detention involves purely private conduct, and summary judgment is appropriate.  See Arline v. City of Jacksonville, 359 F. Supp. 2d 1300, 1312 (M. D. Fla. 2005) (recognizing that the Eleventh Circuit has held that merely alerting authorities and providing information that may lead to an arrest is not sufficient to convert a private persons' actions into public action) (citing Benavidez v. Gunnell, 722 F.2d 615, 618 (10th Cir. 1983)).

        With respect to Davis' due process claim, Davis generally alleges that Dumas violated his rights to due process in the afternoon of January 18, 2004, and on the

---

[15]The undersigned twice afforded Davis the opportunity to file evidence indicating to the contrary.  Orders (Doc. #82, #86) of May 18, 2007, and May 30, 2007.  Davis has twice failed to supplement the record with this information.  The Court expressly advised Davis that if he failed to submit this evidence, it would assume that Davis had no cognizable interest in the residential property.  Order (Doc. #86) of May 30, 2007, at 2.

following day.  On the afternoon of January 18, 2004, Davis again sought the assistance

of a police officer.  When Dumas began yelling at Davis inside the house, Watts asked

Davis to step outside, while Watts remained to talk to Dumas.  When Watts returned, he

told Davis to leave the premise.  The fact that Dumas' had a conversation with Watts,

which resulted in Watts' request that Davis leave the premises without his belongings,

alone, without any evidence indicating the nature or content of the conversation, does not

show that she and Watts reached an understanding to deny him his rights.  See Arline v.

City of Jacksonville, 359 F. Supp. 2d at 1312.

Moreover, the following morning, Dumas hired Armstrong's employees to remove

Davis' property from the house.  Dumas announced to the public that the property was

free.  Plaintiff has provided no evidence that these actions were taken jointly, with, or

through a state actor.  Although Dumas and Watts had met the night before, the record

indicates that Watts only arrived at the scene after a bystander summoned the police to the

scene.  His presence at the scene did not result from an understanding to deprive Davis of

his civil rights.  Upon his arrival, Dumas and Watts talked for approximately 30 to 45

minutes, but again, Plaintiff has not provided any evidence demonstrating the nature or

content of their conversation.  The two then went inside the house, and when they

returned outside, while laughing and having a conversation with Dumas, Watts carried a

bag containing an unidentified item that he placed in his patrol car and left.  While the

fact that Watts took something from the house causes the Court some pause, Watts'

actions are not at issue here; rather, the Court's inquiry concerns whether Dumas acted in concert with Watts. Davis has not shown that Dumas, in any way, assisted Watts in taking the item. Moreover, Plaintiff has failed to present any evidence demonstrating what the unidentified item was and, more importantly, that the unidentified item belonged to him. In other words, Plaintiff has failed to show that Watts and Dumas acted in concert to deprive Davis of his constitutional rights. Without more, Plaintiff simply cannot meet his burden. Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) ("A mere 'scintilla' of evidence . . . will not suffice [to survive summary judgement]; there must be enough of a showing that the jury could reasonably find for that party."). The Court therefore determines that Dumas' actions were not committed under color of state law, and summary judgment is appropriate.

### D.    State Law Claims

Davis asserts numerous state law claims against multiple Defendants. These claims are due to be dismissed. If the federal claims over which the court has original jurisdiction are dismissed, the court may decline to exercise jurisdiction over state law claims. See 28 U.S.C. § 1367(c)(3); McCulloch v. PNC Bank, Inc., 298 F.3d 1217, 1227 (11th Cir. 2002). In view of this Court's determination that summary judgment is appropriate for the federal claims presented in Davis' Complaint, the Court concludes that his supplemental state law claims are due to be dismissed. Id.

## IV.    CONCLUSION

_____For the reasons specified above, the undersigned Magistrate Judge
RECOMMENDS that Defendants' City of Montgomery and Watts' joint motion for
summary judgment (Doc. #37) is GRANTED.  The undersigned further RECOMMENDS
that Final Judgment be entered against the named Plaintiff –Theodore Davis– and in favor
of named Defendants—City of Montgomery and Shelley Watts.  Having recommended
the dismissal of the federal claims, the Magistrate Judge further RECOMMENDS that the
Court DECLINE to exercise supplemental jurisdiction over the state law claims and
REMAND the matter back to the local courts.  Accordingly, the undersigned further
RECOMMENDS Defendant Armstrong's motion for summary judgment (Doc. #34) is
DENIED as MOOT.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said
Recommendation by **June 25, 2007**.  Any objections filed must specifically identify the
findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or
general objections will not be considered by the District Court.  The parties are advised
that this Recommendation is not a final order of the court and, therefore, it is not
appealable.

Failure to file written objections to the proposed findings and recommendations in
the Magistrate Judge's report shall bar the party from a *de novo* determination by the
District Court of issues covered in the report and shall bar the party from attacking on

33

appeal factual findings in the report accepted or adopted by the District Court except upon

grounds of plain error or manifest injustice.  Nettles v. Wainwright, 677 F.2d 404 (5th

Cir. 1982).  See Stein v. Reynolds Securities, Inc., 667 F.2d 33 (11th Cir. 1982).  See also

Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), adopting as binding

precedent all of the decisions of the former Fifth Circuit handed down prior to the close

of business on September 30, 1981.

      DONE this 11th day of June, 2007.

                  /s/ Wallace Capel, Jr.
                  WALLACE CAPEL, JR.
                  UNITED STATES MAGISTRATE JUDGE